UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 21-88 (DLF) |
| v.           )( | Judge Friedrich |
| )( | Bond Hearing: March 25, 2021 |
| RONALD SANDLIN          )( | |

**MOTION TO LIFT PREVENTIVE DETENTION**
**AND POINTS AND AUTHORITY IN SUPPORT THEREOF**

COMES NOW the defendant, Ronald Sandlin, by and through undersigned counsel, and respectfully moves this Honorable Court to lift his preventive detention in this case. In support of this motion, Mr. Sandlin would show:

1. On January 28, 2021, Ronald Sandlin was arrested on a warrant that had originated from this District in Las Vegas, Nevada, where he was residing at the time. The charges at issue in the warrant pertain to the events that occurred at the United States Capitol on January 6, 2021. On February 1, 2021, Mr. Sandlin appeared before a Magistrate Judge in the United States District Court for the District of Nevada. The government moved for Mr. Sandlin to be preventively detained. See Government's Detention Memorandum (Detention Memo). The Magistrate Judge ordered Mr. Sandlin held without bond, see Order of Detention Pending Trial (Detention Order), and his case was transferred to this District. On February 5, 2021, an indictment against Mr. Sandlin was filed in this case. Mr. Sandlin has recently been transferred to this District by the United States Marshal's Service. Mr. Sandlin was arraigned on his indictment on March 18, 2021. A bond hearing has been set for March 25, 2021.

2. When the government moved for Mr. Sandlin to be preventively detained at his initial appearance in the District of Nevada, it claimed he qualified for consideration for preventive detention because he poses a "serious risk of flight" under

1

18 U.S.C. § 3142(f)(2)(A) and a "serious risk to obstruct justice" under 18 U.S.C. § 3142(f)(2)(B). Detention Memo at 1. In its Detention Memo, the government notes how, after the events of January 6, Mr. Sandlin appears to have travelled from where he was living to towns in the Los Angeles area and was then subsequently located in Las Vegas. Id. at 12. The government argues that Mr. Sandlin was in the Los Angeles area and Las Vegas because he was fleeing his residence to avoid arrest, knowing that he must have been wanted by the FBI in part because of "the public streaming of his criminal conduct on social media." Id. at 15. This appears to be the government's basis for claiming that Mr. Sandlin poses a serious risk of flight so as to qualify for consideration for preventive detention. In its Detention Memo, the government also alleges that Mr. Sandlin took down certain videos that incriminated him in connection with the events of January 6 that he had previously posted on his Facebook page. Id. at 7. This appears to be the government's basis for claiming that Mr. Sandlin poses a serious risk of obstruction of justice so as to qualify for consideration for preventive detention. In its Detention Memo, the government then goes on to argue that Mr. Sandlin should be held without bond because he is a flight risk and poses a danger to society. Id. at 14-15. In regards to Mr. Sandlin being a danger to society, the government describes in detail conduct that Mr. Sandlin is alleged to have engaged in at the Capitol on January 6, and it quotes several recorded statements that he is alleged to have made about January 6, both before and immediately after the events at issue. Id. at 3-10. The government argues that, because of what Mr. Sandlin is alleged to have done in connection to the events of January 6, he poses a danger to society—apparently on the theory that the fact that he engaged in those events means he is likely to do something similar in the future. Id. at 15. At the initial appearance, the Magistrate Judge ordered Mr. Sandlin preventively detained, finding that no condition or combination of conditions would reasonably assure the safety of any other person and the community or Mr. Sandlin's appearance at future proceedings. Detention Order at 2. In finding that Mr. Sandlin poses a risk of flight, the Magistrate

Judge noted that Mr. Sandlin has a "[l]ack of significant community or family ties to this district." Id. at 3.

3. Since being appointed to represent Mr. Sandlin, undersigned counsel has been continuously receiving a steady flow of letters of support for Mr. Sandlin from various friends, family members, and business associates. A sampling of the letters is attached to this filing. Attachment, Letters of Support. In the letters, Mr. Sandlin is consistently described as a kind, extremely generous, and non-violent person who goes out of his way to engage and help other people and who is devoted to volunteerism and helping the community. Among other things, the writers frequently remark on how Mr. Sandlin helped start up and develop a non-profit organization serving people in a low-income neighborhood and how he has been actively involved in animal rescue. The writers also frequently remark on Mr. Sandlin's entrepreneurial spirit and how he has not only created his own business but also helped others to start and develop their own. It is important to note that several of the people who have written letters for Mr. Sandlin have expressed deep disapproval of what happened at the Capitol on January 6, 2021. Nevertheless, all of these people still maintain a firm belief that Mr. Sandlin is a person of goodwill. The fact that so many people have come forward to speak on Mr. Sandlin's behalf is remarkable. It is submitted that a review of the attached letters is perhaps the best way to get a sense of who Mr. Sandlin is.[1]

4. Mr. Sandlin is 33 years old. He was raised by his adoptive parents in Long Beach in Los Angeles County, California. Mr. Sandlin's mother is a teacher who taught at a Lutheran school for 25 years. Mr. Sandlin's father is a chemical engineer who worked for 35 years in the aerospace industry. Growing up, Mr. Sandlin was a bright

---

[1] Undersigned counsel has taken the liberty of redacting the letters he has received on Mr. Sandlin's behalf to conceal contact and location information for the writers and all but the first initials of their last names. It is important to note that none of the persons who wrote the letters asked counsel to do this. However, counsel thought it was prudent to make the redactions to protect the writers from unwanted contacts by the media. Upon request, counsel can provide the full names and contact and location information for the writers to the Court.

student and actively involved in the Boy Scouts from the ages of six to sixteen.  Mr. Sandlin lived with his parents and his younger adoptive brother in Long Beach until he was in his early twenties.  He moved out to live with his girlfriend.  Six years ago, Mr. Sandlin and his girlfriend moved from California to Las Vegas, Nevada.  In Nevada, Mr. Sandlin had an online marketing business that was quite successful for a while.  Mr. Sandlin and his girlfriend were planning to get married.  However, Mr. Sandlin's business suffered some setbacks and began failing, and he grew depressed.  About nine months ago, Mr. Sandlin's girlfriend ended their relationship.  At this time, Mr. Sandlin's parents had recently relocated from Long Beach, California to a rural community outside of Memphis, Tennessee to be with Mr. Sandlin's maternal grandfather, who was in poor health.  When he and his girlfriend broke up, Mr. Sandlin decided he wanted to be closer to his parents and his grandfather, who was now dying.  In approximately July 2020, Mr. Sandlin moved from Las Vegas to Memphis.  He was only in Memphis for a short time before his grandfather died.  Around this same time, he realized he had made mistake leaving his life in Las Vegas, and he decided to move back.  In November 2020, Mr. Sandlin gave up his apartment in Memphis, moved in with his parents, and began making plans to move back to Las Vegas.  He was already in the process of relocating back to Las Vegas when the events of January 6, 2021 transpired.  After those events, Mr. Sandlin did in fact relocate to Las Vegas.  During this time, he also visited friends where he used to live in the Los Angeles area.  This is why Mr. Sandlin was in the Los Angeles area after January 6 and why he was in Las Vegas when he was arrested—not because he was fleeing his residence the Memphis area to avoid arrest.  When the Magistrate Judge in the District of Nevada found that Mr. Sandlin had a "[l]ack of significant community and family ties to this district" in concluding that he posed a risk of flight, the judge was incorrect.  Mr. Sandlin had lived in Las Vegas for over five years and had an established life there.

5. Mr. Sandlin is highly committed to community activism. When Mr. Sandlin was still living in California, he started a non-profit organization called Pedal Movement in a low-income neighborhood in Long Beach with a large homeless population. Pedal Movement worked to provide bicycles to people in the community to foster their ability to get and keep jobs. Mr. Sandlin and his friend were able to get a local arts college to donate a parking lot with an abandoned building to Pedal Movement. They transformed the building into the hub of the operation. Pedal Movement accepted donated bikes and parts, gave the bikes they received and refurbished to people in the community, trained persons to become bicycle mechanics, and provided people in the community with affordable bicycle-repair services. Even today, an iteration of Pedal Movement is still operating. Many of the people who have written letters for Mr. Sandlin have commented on his involvement in starting up and developing Pedal Movement. See Attachment, Letters of Support at 1, 2, 3, 11, 12.

6. In part using lessons he had learned from online outreach for Pedal Movement, Mr. Sandlin developed his own on-line marketing company. This company became a thriving concern when Mr. Sandlin moved to Las Vegas. Mr. Sandlin would invest in advertising to identify and recruit people who were in need of certain services and products. He would then connect these people with the appropriate providers. As an adjunct to his online marketing business, Mr. Sandlin also consulted with other online business owners, especially minority business owners, about developing their businesses. Much of this work was done pro bono. At the height of his business, Mr. Sandlin had seven employees and a monthly payroll in excess of $50,000. Many of the people who have written letters of support for Mr. Sandlin have commented on his entrepreneurial and business activities. See Attachment, Letters of Support at 4, 10, 14-15,

7. After moving to Tennessee from Las Vegas, Mr. Sandlin began developing a business plan for helping makers of athletic and leisure wear identify

manufacturing operations to make their products.  If released, this is the business that Mr. Sandlin intends to pursue.

8. According to the Pretrial Service Agency report that was prepared for Mr. Sandlin's initial appearance in the District of Nevada, Mr. Sandlin has an arrest for DUI from 2013.  The report does not indicate any disposition.  Apart from this incident, Mr. Sandlin has not had any other involvement with the criminal-justice system.

9. In this case, Mr. Sandlin has now been charged by indictment.  None of the counts he is charged with create a presumption that he should be held without bond. See 18 U.S.C. §3142(e)(2), (e)(3), and (f)(1).  In the indictment, Mr. Sandlin is charged with two separate counts of assaulting, resisting, or impeding a United States officer/employee under 18 U.S.C. § 111(a)(1).  The government has provided undersigned counsel with videos from the U.S. Capitol from January 6, 2021 that it alleges show Mr. Sandlin committing each of these charged offenses.  One video shows what appears to be Capitol security personnel trying to push closed a set of double doors while a group of people occupying the Capitol are trying to keep the doors open.  The security personnel and the occupiers are all on the outside of the doors.  The government appears to be alleging that Mr. Sandlin is one of the people trying to keep the doors open. In the video, occupiers appear to push the security personnel out of the way and then chase them off.  It does not appear that anyone was injured.  Another video shows what appears to be a U.S. Capitol Police Officer in a doorway blocking occupiers who are pushing against him from entering through the doorway into the room behind him. Behind the officer are other occupiers who have already entered the room, presumably through some other entrance.  These occupiers appear to be trying to pull the officer out of the doorway from behind.  While this incident was undoubtedly traumatic and scary for the officer involved, it does not appear from the video that he was injured.

10. If the Court sees fit to release Mr. Sandlin, he will live with his parents on their 40-acre farm about an hours' drive from Memphis.  Mr. Sandlin's parents describe

where they live as being "in the middle of nowhere." Mr. Sandlin will consent to GPS location monitoring and travel restrictions. He will also consent to having PSA monitor his online activities to alleviate any concerns the Court might have about him connecting with people online to engage in future improper political activities. If Mr. Sandlin is released, Mr. Sandlin's parents are willing to drive to Washington, D.C. to pick Mr. Sandlin up and take him straight back to their home.

11. Where a magistrate judge has ordered a person to be held without bond pending trial, "the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). In order to hold a person without bond pending trial, a judicial officer must find that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Here, conditions of release can be fashioned for Mr. Sandlin that will reasonably assure his appearance at future court proceedings and the safety of other persons and the community. Accordingly, Mr. Sandlin should be released on conditions.

## DISCUSSION

As an initial matter, it must be noted that it is questionable whether of not Mr. Sandlin even qualifies for consideration for preventive detention on the grounds that he poses a "serious risk of flight" and a "serious risk to obstruct justice." In its initial Detention Memo, the government references the fact that, after January 6, Mr. Sandlin went to the Los Angeles area and then to Las Vegas. The government argues that this shows that Mr. Sandlin was fleeing the Memphis area to avoid arrest. However, when properly understood, the facts do not show this at all. Mr. Sandlin had already made plans to relocate from Memphis, where he had only been for a short time, back to Las Vegas prior to January 6, and was simply following through on those plans when he went to California and Las Vegas after January 6. On this point, it should be noted that, given

7

"the public streaming of his criminal conduct on social media" that the government has referenced, if Mr. Sandlin was trying to avoid arrest, he would not have gone to the Los Angeles area and Las Vegas, the only two places where he has ever lived and is thus known enough to likely be turned in by people who would recognize him.  Thus, Mr. Sandlin's travel to the Los Angeles area and Las Vegas does not evince an attempt to flee.  Moreover, in regards to obstruction of justice, the fact that Mr. Sandlin may have taken down from public view on Facebook potentially incriminating videos that he himself posted in the first place does not provide sufficient grounds for actually concluding that he poses a serious risk of obstruction of justice.  One's decision to simply no longer publicize his illegal conduct is somewhat less sinister than actually concealing evidence that he never made public to begin with.  Beyond all this, even if it can be found that Mr. Sandlin does qualify for consideration for preventive detention on the grounds that he poses a "serious risk of flight" or a "serious risk to obstruct justice," the Court still cannot find that such detention is appropriate upon closer examination of the facts.  When deciding whether or not to detain a person pending trial, a judicial officer is to look at 1) the "nature and circumstances of the offense[s] charged," 2) "the weight of the evidence against the person," 3) "the history and characteristics of the person," and 4) "the nature and seriousness of the danger to any person or the community that would be posed by the person's release."  18 U.S.C. § 3142(g).  Consideration of these factors compels a finding that Mr. Sandlin should be released on conditions.

**<u>Nature and Circumstance of the Offenses and Weight of the Evidence</u>**

In this case, Mr. Sandlin is charged by indictment with, among other things, two separate counts of assaulting, resisting, or impeding a United States officer/employee under 18 U.S.C. § 111(a)(1).  These are obviously the counts that will most trouble the Court.  Admittedly, the government has video evidence that appears to capture the conduct giving rise to these counts.  However, it must be noted that the video evidence

does not appear to show that the United States personnel listed as the victims in the counts were injured.  Additionally, neither of the two counts under 18 U.S.C. §111(a)(1) nor any of the other counts in the indictment against Mr. Sandlin are for offenses that are considered dangerous enough to create a presumption on their own that he should be held without bond, and the government has not pointed to anything outside of conduct related to those charged crimes that would indicate that Mr. Sandlin would pose a danger to society.  Additionally, the events of January 6 that Mr. Sandlin is alleged to have engaged in were occasioned by an already uncommon event (the quadrennial counting of the Electoral College votes in the United States Congress) occurring in the extremely unusual context of people being widely told by news sources and obviously very high-ranking public officials that the votes were illegitimate and the counting process corrupt.  It is hard to see how a similar confluence of events would occur again.  Accordingly, consideration of the nature and circumstances of the charged offenses and the weight of the evidence does not militate in favor of preventive detention.

### The History and Characteristics of Mr. Sandlin

Mr. Sandlin is 33 years old and, apart from a DUI arrest from eight years ago, does not appear to have any prior involvement with the criminal-justice system.  Mr. Sandlin has a history of community activism and volunteerism and is widely regarded as kind, generous, and non-violent person.  He has been a productive member of society—a developer of a non-profit organization serving low-income and homeless people, an entrepreneur, an employer.  He has helped other people develop their own businesses.  Even if it is assumed that Mr. Sandlin did what the government has charged him with, it must be acknowledged that such conduct would still be anomalous for him and not representative of who he is as a person.  He has strong support from his family and friends.  Consideration of Mr. Sandlin's history and characteristics militate strongly in favor of release.

### The Danger Posed by Mr. Sandlin's Release

If the Court sees fit to release Mr. Sandlin, he will live with his parents on their 40-acre farm about an hours' drive from Memphis in a rural area.  Mr. Sandlin will consent to GPS location monitoring and travel restrictions.  He will also consent to having PSA monitor his online activities to alleviate any concerns the Court might have about him connecting with people online to engage in future improper political activities.  Especially if such conditions are imposed, it is hard to see how Mr. Sandlin would pose a danger to anyone or the community.  Moreover, if Mr. Sandlin is released, Mr. Sandlin's parents are willing to drive to Washington, D.C. to pick him up and take him straight back to their home.  Consideration of the danger posed by Mr. Sandlin if he were released therefore militates against preventive detention.

WHEREFORE, the defendant, Ronald Sandlin, moves this Honorable Court to vacate the order of preventive detention in this case and release him on the conditions specified above.

Respectfully submitted,

_____/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Ronald Sandlin
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 347-6101