## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** )( | |
| )( | Criminal No. 21-88 (DLF) |
| v. )( | Judge Friedrich |
| )( | Bond Hearing: April 6, 2021 |
| **RONALD SANDLIN** )( | |

## REPLY TO GOVERNMENT'S
## MEMORANDUM IN OPPOSITION TO
## DEFENDANT RONALD SANDLIN'S MOTION FOR BOND

COMES NOW the defendant, Ronald Sandlin, by and through undersigned counsel, and respectfully replies to the Government's Memorandum in Opposition to Defendant Ronald Sandlin's Motion for Bond. In support of this reply, Mr. Sandlin would show:

1. On January 28, 2021, Ronald Sandlin was arrested on a warrant that originated from this District in Las Vegas, Nevada, where he was residing at the time. The charges at issue in the warrant pertain to the events that occurred at the United States Capitol on January 6, 2021. On February 1, 2021, Mr. Sandlin appeared before a Magistrate Judge in the United States District Court for the District of Nevada. He was ordered held without bond, and his case was transferred to this District. On February 5, 2021, an indictment against Mr. Sandlin was filed in this case. Subsequently, Mr. Sandlin's person was transferred to this District by the United States Marshals Service. Mr. Sandlin was arraigned on his indictment on March 18, 2021.

2. Mr. Sandlin has filed a Motion for Bond and Points and Authority in Support Thereof (Bond Motion; ECF #15). The government has filed a Government's Memorandum in Opposition to Defendant Ronald Sandlin's Motion for Bond (Opposition; ECF # 16). A bond hearing is currently scheduled for April 6, 2021. This

reply is intended to supplement Mr. Sandlin's Bond Motion by addressing arguments and points the government makes in its Opposition.

3. In its Opposition, the government references a Facebook post that Mr. Sandlin allegedly made where he states that Josiah Colt, Nathaniel DeGrave, and he are planning to going to D.C. on January 6 "to stand behind our president Donald J. Trump." Opposition at 10. The government then indicates that the post in question contained a link to a GoFundMe webpage where there was a picture in which Mr. Sandlin had superimposed his face on that of an individual in a car holding a semi-automatic rifle. Opposition at 11. An Internet search turns up the picture for the GoFundMe page linked to the Facebook post at issue. The picture is of a person in a car holding an ostentatious, gold-plated rifle. Mr. Sandlin appears to have superimposed his face on that of the person. Mr. Sandlin's face is twice as large as a normal face and positioned in an obviously ridiculous way. Under Seal Attachment[1] at 1.

4. In its Opposition, the government notes that Josiah Colt, Nathaniel DeGrave, and Mr. Sandlin began a private Facebook chat on December 31, 2020 to make plans for going to D.C. on January 6. Opposition at 11. The government notes that, in the chat, the three men discussed the various weapons and paramilitary gear that they were planning to buy to bring with them to D.C. for January 6. Id. Further, the government states the three men "filled up their Amazon shopping carts with weapons and paramilitary gear to take to the Capitol." Id. However, a review of the Facebook chat in question shows that it was not quite as sinister as the government suggests. For instance, in the chat, on December 31, 2020, Mr. DeGrave stated that he was "looking at 100w laser the thing can instantly burn paper." Mr. Sandlin replied, "Shit I'm going to get a boomerang" and then posted a link to the boomerang he said he was going to buy.

---

[1] The Under Seal Attachment is being filed under seal and thus separately from this filing. Nevertheless, it is being filed roughly contemporaneously with this filing.

Mr. DeGrave responded, "hahaha that's dope af we're going in like the justice league.[2]" Under Seal Attachment at 2-3.  Later, Mr. Sandlin posted in the chat an Amazon link to a spear that he claimed he had just bought for the trip.  Id. at 4.  It is likely unnecessary to point out that there no evidence that Mr. Sandlin ever actually bought a boomerang or a spear—that alone brought such items to D.C.  In its Opposition, the government points out how Mr. DeGrave stated in the Facebook chat that he was having "about 300 worth" of Amazon purchases sent to Mr. Sandlin, apparently for Mr. Sandlin to hold for him until two men rendezvoused en route to D.C.  Opposition at 12.  A review of the Facebook chat shows that one of the items that Mr. DeGrave purchased from Amazon was a combination black skull facemask and helmet that he bought for $69.95.  Under Seal Attachment at 5.  Even disregarding the fact that just a decent helmet alone would likely cost significantly more than $69.95, the costume aspect of Mr. DeGrave's purchase is obvious.[3]  A little later in the chat, in an obviously more serious vein, Mr. Sandlin states, ""I'm going to go pretty basic not ready for a fight."  He then comments, "I'm planning to wear my motorcycle jacket which will protect against a lot."  Videos from the events of January 6 that the government claims capture Mr. Sandlin show him wearing ordinary street clothes.  Other than the fact that the person might possibly be wearing kneepads, there is nothing remarkable about his attire. The person is not even wearing a motorcycle jacket—just an orange sweatshirt.

   5. Even though the government makes repeated reference to the Facebook chat to which Mr. Colt, Mr. DeGrave, and Mr. Sandlin were allegedly party, it is important to note that the government maintains that the three men split up once they were purportedly inside the Capitol, and it states that they did not regroup until after they

---

[2] To be clear, the Justice League is a crime-fighting consortium of comic-book figures that includes, among others, Bat Man, Wonder Woman, and Aqua Man.  Undersigned counsel knows that the abbreviation "af" is texting shorthand for "as f--k."  Thus, the phrase "that's dope af" means "that's dope as f--k."
[3] It should be noted that videos from the Capitol from January 6 that the government claims capture Mr. DeGrave show him wearing a helmet very much like the one that came with the skull facemask that he purchased on Amazon

3

had all left the Capitol separately. Opposition at 16-17. Additionally, even if the three men did travel to the Capitol together, there is no evidence that they did so out of anything more than convenience or that they had any purpose among themselves beyond wanting to be part of the larger protest that was going to occur. It is important to note that the government has not charged any of the men as codefendants or co-conspirators. Each has a different case before a different judge.

6.     In its Opposition, the government nakedly asserts that Mr. Colt, Mr. DeGrave, and Mr. Sandlin transported to the D.C. metropolitan area "one Glock 43 pistol, Sandlin's pocket pistol…, two magazines of ammunition, bear mace, gas masks, a handheld taser/stun gun, military style vests/body armor, two helmets, an expandable baton, walkie-talkies, and several knives." Opposition at 12-13. The government does not disclose what its basis of knowledge is for this assertion. It is important to note that the government then goes on to say that it "understands that Sandlin armed himself with at least a knife while in the Capitol on January 6," a statement which strongly implies that it does not have evidence that he took any other weapons into the Capitol. It should also be said again that the videos from the Capitol from January 6 that capture the person the government claims is Mr. Sandlin show that he is wearing ordinary street clothes and that he is not wearing a helmet, gas mask, vest, or body armor. If Mr. Sandlin did bring such items to the D.C. area, he did not bring them with him into D.C. on January 6. Moreover, the videos never show Mr. Sandlin wearing or brandishing a weapon. Beyond this, the government has not referenced any evidence to show that Mr. Sandlin has ever illegally possessed a firearm. Additionally, in its Opposition, the government concedes that Mr. Colt and Mr. Sandlin had a conversation before coming into D.C. in which they agreed that they would not bring guns into the city. Opposition at 13.

7.     In its Opposition, the government states that, on January 4, 2021, Mr. DeGrave sent Mr. Sandlin via their Facebook chat "a screenshot of 'wildportest.com' depicting a map of the U.S. Capitol with a 'Meet Here' notation in front of the building."

4

Opposition at 12.  It is important to note that the area designated by the "Meet Here" notation is a grassy area <u>outside</u> the Capitol.  Under Seal Attachment at 6.  Moreover, a review of the Facebook chat between Mr. Colt, Mr. Sandlin, and Mr. DeGrave shows that, on January 5, 2021, they were sharing a flyer captioned MAGA RALLY MAP GUIDE that pointed out where various events for the following day were scheduled to occur and what speakers were going to be present, including Roger Stone, Mike Lindell, George Papadopolous, and Stephen Moore.  The events featured in the flyer spanned the day and were set to occur at various places on or near the National Mall, including outside the Supreme Court building, outside the Capitol, and at the Lincoln Memorial. <u>Id.</u> at 7-8.  The next day, a similar flyer that was posted to the Facebook chat even listed the "Wild Protest" the three men were seemingly planning to attend.  The flyer describes the event as an opportunity for "We the people… [to] take to the U.S. Capitol lawn and steps and tell Congress #DoNotCertify on #Jan6!"  <u>Id.</u> at 9.  Given all this, it appears that, at least as of January 5, 2021, Mr. Colt, Mr. DeGrave, and Mr. Sandlin were planning to attend apparently legitimate events around the Capitol on January 6--not actually illegally enter it.  Thus, if they did in fact end up entering the Capitol on January 6, it would seem they did so because they were caught up in the emotions of the day and the mob mentality that got stirred up by the various speakers at the rallies that were occurring, including the sitting President.

       8.     In its Opposition, the government references a video it has received that was purportedly made by Mr. Colt, Mr. DeGrave, and Mr. Sandlin just "prior to the riot at the Capitol."  According to the government, the video shows the three men talking about what might happen as the day progresses.  Opposition at 16.  A review of the video shows that it was made after the three men had already been to a MAGA Rally on the Mall.  In the video, the three men are passing around a cell phone recording themselves making statements about how "freedom is paid for with blood" and how, "if we need to occupy the Capitol, we will occupy the Capitol."  The men make mention of how they

5

have just come form a rally, and it is clear they have been impressed by it.  From the evidence that undersigned counsel has seen, this mention of occupying the capitol on the video appears to be the first time that Mr. Colt, Mr. DeGrave, or Mr. Sandlin ever indicated they were even thinking of the possibility of actually entering the Capitol.  Additionally, it is important to note that the statements the three men make on the video are clearly intended for an audience and therefore have an air of posturing.  Also, it seems worthwhile to point out that the three men are sitting at a table at a TGI Fridays chain restaurant when they are making the video.  In the video, while the three men are passing around the camera and making their pronouncements, their waitress is still tending to them, bringing them their food and drinks.

9. In its Opposition, the government describes videos it has in its possession that purportedly show the two assaults on Capitol security personnel that Mr. Sandlin is charged with.  Opposition at 15-16.  It is important to stress that the assaults allegedly captured on the video appear to involve only non-injurious physical contact and do not involve the use any of any weapons or any objects being employed as weapons.  Additionally, undersigned counsel has not been made aware of any evidence that indicates that either person Mr. Sandlin is alleged to have assaulted was injured.[4]

10. In its Opposition, the government references several posts that Mr. Sandlin seemingly made on Facebook after the events of January 6 that it claims show that he was trying to flee law enforcement.  Opposition at 17-20.  Mr. Sandlin was arrested in Las Vegas.  The government makes its arguments that Mr. Sandlin was on the run from law enforcement when he was arrested apparently in response to the point that Mr. Sandlin

---

[4] In its Opposition, the government also makes reference to surveillance footage it has that shows Mr. Sandlin with a crowd "pushing three outnumbered officers against a door and forcing that door open." Id. at 27.  In a footnote, the government indicates that it might charge Mr. Sandlin with yet another assault for this conduct. Id. at 27, n.14.  The government has turned over to undersigned counsel through discovery a video that appears to be the surveillance footage that it is talking about.  In the video, the person who the government likely believes is Mr. Sandlin is standing near a group of people who are pushing against officers and forcing the door open, but the person himself does not appear to be involved in pushing the officers or in forcing the door open.  It is therefore possible that the surveillance footage the government is talking about is different than the footage counsel is referencing.

makes in his Bond Motion that the reason he was in Las Vegas at the time he was arrested was not because he was fleeing law enforcement after the events of January 6 but rather because he was following through on plans he had made before January 6 to relocate back there after having moved away last summer.  Bond Motion at 4.  Notwithstanding the government's arguments that Mr. Sandlin was on the run when he was arrested in Las Vegas, a review of a private Facebook chat between Josiah Colt and Mr. Sandlin that the government has now turned over in discovery shows that, in November 2020, Mr. Sandlin was sending Mr. Colt listings of places that he was thinking about renting in the Las Vegas area.  Moreover, on December 14, 2020, Mr. Sandlin sent Mr. Colt a link to a cargo trailer that he was planning on purchasing for his move to Las Vegas.  Undersigned counsel has learned from Mr. Sandlin's parents that Mr. Sandlin did in fact actually purchase the cargo trailer for his planned move.  It should also be noted that, even in its Opposition, the government makes reference to Facebook messages that Mr. Sandlin sent prior to his arrest in which he indicates that he has been consulting with a lawyer and that he is "ready to face my consequences like a man."  Opposition at 21-22.  These messages would tend to indicate that whatever messages Mr. Sandlin had sent that might indicate he was fleeing law enforcement were not entirely seriousness.  Moreover, as stated in his Bond Motion, if Mr. Sandlin really was seriously trying to flee law enforcement, it is unlikely he would have gone back to Las Vegas, a place where he has lived for the past six years, is known, and is thus likely to be recognized and turned in.  See Bond Motion at 8.  Additionally, when Mr. Sandlin was arrested, his warrant was still under seal, so there was no way he could have known that he had a warrant out for his arrest.  On this point, it must be noted that, even in its Opposition, the government acknowledges that, after January 6, Mr. Sandlin sent a Facebook message saying "that he believed charges against him were 'imminent'" –i.e., not actually filed yet.  Opposition at 17.  Also, it acknowledges that he sent a message to a friend he was planning to visit that said, "I'm technically not a fugitive so you aren't harboring a fugitive."  Opposition at 18.

Thus, it appears that Mr. Sandlin did not actually think a warrant had yet issued for his arrest at the time he sent these messages. Moreover, a review of Mr. Sandlin's Facebook return shows that, after January 6, he was actively seeking advice about how to find out if he had a warrant for his arrest, clearly indicating that—at the least—he did not know if he had a warrant.

11. In its Opposition, the government indicates that "[a] comparison of tips submitted by to the FBI, publically-available content from the defendant's Facebook account, and the search warrant return on the account confirms that Sandlin deleted several posts, videos, and messages related to the insurrection and his involvement in it." Opposition at 21. The government then goes on to say that, in deleting these items, Mr. Sandlin "destroyed evidence," thereby obstructing justice. Id. at 26. The government does not specifically identify what items it thinks Mr. Sandlin deleted. However, to the extent that Mr. Sandlin may have taken down videos he had posted on Facebook, it must be recognized that taking down a video is not the same thing as destroying it. On this point, it must be acknowledged that, even if Mr. Sandlin had posted videos and then later taken them down, those videos would have already been widely downloaded and turned over to the F.B.I. and/or the media—given how widely publicized the events at the Capitol on January 6 were and how great a backlash they prompted. Indeed, the government acknowledges that apparently incriminating videos it has of Mr. Sandlin were obtained from the media. Id. at 17. Moreover, like not making a confession, not publicizing things that could incriminate you is not obstruction of justice. Beyond this, a review of Mr. Sandlin's Facebook return shows that, after January 6, he was receiving harassing comments from people about his posts and videos. Mr. Sandlin reports that he was even getting death threats. If he did take down any videos or posts he had put up, it was quite likely because he was thinking of his safety.

12. In its Opposition, the government discusses a jail call that Mr. Sandlin allegedly had with his mother sometime after his arrest. According to the government,

8

Mr. Sandlin told his mother that he has a video he wants her to get to his lawyer.  Mr. Sandlin says this video gives him "leverage."  Opposition at 22-23.  The government then goes on to say that, when Mr. Sandlin was talking of "leverage" in the phone call, "presumably he was referring to damning evidence against his two co-conspirators [Mr. Colt and Mr. DeGrave]."  Id. at 26.  The government makes this argument in an effort to show that Mr. Sandlin is likely to obstruct justice.  This argument misunderstands the evidence.  A recording of the phone call in question has been turned over in discovery.  On the call, a man the government says is Mr. Sandlin tells the woman he is talking to that he has a video he wants her get to his lawyer.  Regarding the video, the man says:

> [The] video [is] of me and Nate [DeGrave] and Josiah [Colt] praying for no violence and that we have peaceful resolution of that event [January 6].  They are trying to make me into a terrorist.  I have video of us praying, okay, literally praying with our bibles open, asking that we get through these trials as America together, peaceful, with no violence and all that.  It makes us actually look good.

A few minutes later, the man returns to the subject of the video, saying:

> I have leverage [emphasis added] with what's on, you know, the footage.  I also have, you know it makes, it paints me in a different light, it paints Josiah, me, and Nate in a completely different light when they see us praying in front of a bible.

The "leverage" being spoken of here is clearly not evidence that could be used to blackmail Mr. Colt and Mr. DeGrave.

   13. Since filing Mr. Sandlin's Bond Motion, undersigned counsel has continued to receive letters of support from friends and family of Mr. Sandlin for counsel to give to the Court.  Three of these letters are in the Under Seal Attachment that is being submitted in connection with this filing.  Under Seal Attachment at 10-13.  These letters press the same theme that was consistently made in the letters that were previously submitted with Mr. Sandlin's Bond Motion—that is, Mr. Sandlin's altruism and desire to

9

help others.  Finally, Mr. Sandlin has written a letter that he would like the Court to consider in deciding whether or not to release him pending trial.  Id. at 14-16.

WHEREFORE, the defendant, Ronald Sandlin replies to the Government's Memorandum in Opposition to Defendant Ronald Sandlin's Motion for Bond.

                              Respectfully submitted,

                              _____/s/_____
                              Jerry Ray Smith, Jr.
                              D.C. Bar No. 448699
                              Counsel for Ronald Sandlin
                              717 D Street, N.W.
                              Suite 310
                              Washington, DC 20004
                              E-mail: jerryraysmith@verizon.net
                              Phone: (202) 347-6101