**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | |
| | : | Case Number 21-cr-88-DLF |
| **RONALD SANDLIN,** | : | |
| | : | Bond Hearing: April 6, 2021 |
| Defendant. | : | |

**GOVERNMENT'S SUPPLEMENT TO ITS MEMORANDUM IN**
**OPPOSITION TO DEFENDANT RONALD SANDLIN'S MOTION FOR BOND**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this supplement to its memorandum in opposition to the defendant's motion for bond filed on March 22, 2021.

The government seeks to address various factual assertions raised by the defendant in his Reply dated March 31, 2021, and therefore requests that the following points and authorities, as well as any other facts, arguments, and authorities presented at the upcoming bond hearing, be considered in the Court's determination regarding pretrial detention.

1. On repeated occasions, defense counsel appears to dispute whether or not his client was inside the Capitol that day. The defendant's own selfie-style videos that he livestreamed that day—and later deleted—make clear that he "breached the Capitol," in his words. Indeed, he announced on Facebook the day after the riot that "[w]e are not terrorists. We occupied and for the most part left that place relatively put together all things considered."

2. Regarding whether Mr. Sandlin poses a flight risk, his own actions and statements demonstrate that he is a flight risk. It is true that the defendant had conversations

1

with Josiah Colt about moving to Las Vegas prior to January 6, but this fact in no way negates his travel back and forth across the country—not just a trip directly from D.C. to Las Vegas—or his own statements that he was "on the run" and had not "slept in the same place more than 1 night" since January 6.  And while he may have at one time considered facing the consequences of his actions, he ultimately chose not to self-surrender to authorities with the assistance of his counsel and instead crisscrossed the country like a fugitive.  Unrelated to this case, the U.S. Department of State also appears to believe the defendant is a flight risk,[1] as it suspended his passport based on his $500,000 tax burden.[2]  Combined with his criminal exposure in this case, these facts show by a preponderance of the evidence that the defendant is a flight risk.

3. The government can specify a few examples of what the defendant removed from his Facebook:  videos submitted by tipsters and provided to media outlets showing the defendant in the Rotunda smoking what appears to be a marijuana joint as well as on the Senate Gallery balcony, exclaiming that "we breached the building into our Capitol" and later telling (likely an officer) that "we've pushed our way through already, sir"; a video of the defendant asking where the Senators were located and telling law enforcement something to the effect of "we've already forced out way into other places"; videos from either January 5 or January 6 in which the female he traveled with was featured; the video from the TGI Friday's in which he calls on those watching his livestream to "take the Capitol"; and private messages to

---

[1] *See* U.S. Dep't of State, *Passports and Seriously Delinquent Tax Debt*, https://travel.state.gov/content/travel/en/passports/legal-matters/passports-and-seriously-delinquent-tax-debt.html#:~:text=If%20you%20have%20been%20certified,U.S.%20passport%20may%20be%20revoked.
[2] In a jail call, the defendant stated that he told the Pretrial Services Officer in Las Vegas that his passport had been suspended because he owed $500,000 in back taxes.

individuals discussing the events of the Capitol riot and its aftermath, sometimes followed by a request by the defendant to chat with him via an encrypted messaging app. And to be clear, rather than changing the privacy setting so that his posts would not be viewable to the public, he deleted them entirely, as they are absent from the search warrant return on his Facebook account.

4. The government cannot pretend to know exactly what the defendant meant when he described video footage he wanted sent to his attorney as "leverage" in a jail call, though that term typically is used to refer to information one has against another. Furthermore, the fact that he stated he had "leverage … on the footage" and "also ha[d]" footage of the three individuals praying led the government to believe the "leverage" footage was separate and apart from the prayer footage. The government is aware that this footage is now in the possession of his former attorney in Las Vegas and thus is in the midst of seeking legal process to obtain it. Until then, we cannot be sure to what "leverage" he was referring.

5. With respect to why the defendant was not charged in the same indictment as Mr. DeGrave, the other individual who traveled to D.C. with the defendant and was present with him inside the Capitol: Mr. Colt, the third individual who traveled with them, was indicted on February 3, 2021—the same day the defendant and Mr. DeGrave had their initial appearances in Las Vegas. The indictment timeline for these individuals thus varied. The government was and is still investigating them for conspiracy and anticipates superseding in this matter in the near future.

6. As the D.C. Circuit recently instructed in an opinion remanding a detention decision in a Capitol riot case, "those who actually assaulted police officers and broke through

windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, No. 21-3010 (D.C. Cir. Mar. 26, 2021) (citation omitted). The government submits that all three scenarios apply to this defendant. He assaulted law enforcement officers on at least three occasions,[3] forcibly pushed exterior doors open as part of a mob allowing likely hundreds of other rioters to breach the Capitol, and conspired with others to travel with weapons to the D.C. metropolitan area to "stop the steal" and incited others to "take the Capitol." He thus fits squarely within that higher category of dangerousness the D.C. Circuit endorsed as potentially justifying pretrial detention.

7. Finally, the government would like to reiterate its concern that the defendant poses a serious risk to obstruct justice in this case. He has shown himself quite capable of using encrypted messaging applications to converse with co-conspirators and others about the events at the Capitol on January 6. More importantly, the government understands that Pretrial Services does not do device or internet monitoring, and so any future obstructive conduct in this vein likely would go undetected. Moreover, it is unlikely that his parents would be able to monitor his use of devices given that his father appears to work as an engineer and his mother cares for other family members, including small children.

---

[3] As previewed during the bond hearing, the government recently became aware of footage depicting the defendant as part of a mob that overwhelmed three U.S. Capitol Police officers near the Rotunda doors. The government submits that his act of forcibly pushing, along with the crowd, against these officers and forcing the exterior Rotunda doors open constitutes yet another assault by the defendant on federal officers.

4

**Conclusion**

For the above reasons, the Government submits that there is clear and convincing evidence that the defendant poses a serious risk to obstruct justice and is a danger to the community, and that there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community or the integrity of this proceeding, if he were to be released. The government also submits that he is a risk of non-appearance by a preponderance of the evidence. The Court should therefore deny his motion for bond.

Respectfully submitted,

CHANNING D. PHILLIPS
ACTING UNITED STATES ATTORNEY
D.C. Bar No. 415793

By: */s/ Jessica Arco*
Jessica Arco
Special Assistant U.S. Attorney
D.C. Bar No. 1035204
U.S. Attorney's Office for the District of Columbia
555 Fourth Street NW, Fourth Floor
Washington, DC 20530
Jessica.arco2@usdoj.gov
202-431-5198

Date:  April 5, 2021

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a copy of this pleading to be served upon defense counsel, Jerry Ray Smith, Jr., Esq., this 5th day of April 2021.

                                              /s/
                                              Jessica Arco
                                              Special Assistant United States Attorney