## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** )( | | |
| | )( | **Criminal No. 21-88 (DLF)** |
| **v.** | )( | **Judge Friedrich** |
| | )( | **Status: September 21, 2021** |
| **RONALD SANDLIN** | )( | |

## MOTION TO DISMISS COUNT FIVE OF INDICTMENT
## FOR FAILURE TO STATE AN OFFENSE
## <u>AND POINTS AND AUTHORITY IN SUPPORT THEREOF</u>

COMES NOW the defendant, Ronald Sandlin, by and through undersigned counsel, and respectfully moves this Honorable Court, pursuant to Fed. R. Crim. P. 12(b)(3)(B)(v), to dismiss count five of the indictment in this case for failure to state an offense, such count charging him with a violation of 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding).  In support of this motion, Mr. Sandlin would show:

1.      In connection with the events of January 6, 2021 at the United States Capitol, Ronald Sandlin has been charged in an eleven-count indictment (Indictment) (ECF #6).

2.      In count five of the Indictment, Mr. Sandlin is charged with Obstruction of an Official Proceeding under 18 U.S.C § 1512(c)(2).  Specifically, count five alleges:

> On or about January 6, 2021, within the District of Columbia and elsewhere, Ronald Sandlin[] attempted to, and did, corruptly obstruct, influence, and impede an <u>official proceeding</u>, that is, a proceeding before Congress, <u>by entering and remaining in the United States Capitol without authority and committing an act of civil disorder, and engaging in disorderly and disruptive conduct</u>.

Indictment at 3 (emphases added).

1

3.      In charging Mr. Sandlin with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2) for conduct he allegedly engaged in "[o]n or about January 6, 2021… in the United States Capitol," count five of the Indictment makes clear that the official proceeding at issue is the congressional hearing to count the Electoral College votes that occurred at the Capitol on January 6, 2021.

4.      18 U.S.C. § 1512(c)(2) does not apply to disruptive or even intimidating conduct directed at official proceeding while it is occurring.  At the most, § 1512(c)(2) can only be understood as applying to conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations.  The conduct that Mr. Sandlin is charged with in count five of the Indictment is not the kind of conduct that could have affected the January 6 congressional hearing to count the Electoral College votes in this way.  Thus, in charging Mr. Sandlin under § 1512(c)(2) for that conduct, count five of the Indictment fails to state an offense and must be dismissed.

5.      A congressional hearing to count the Electoral College votes is not a hearing that qualifies as an "official proceeding" for the purposes of 18 U.S.C. § 1512(c)(2).  Thus, for this reason too, count five fails to state an offense and must be dismissed.

**DISCUSSION**

**I.      COUNT FIVE OF THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE THE CONDUCT IT CHARGES MR. SANDLIN WITH IS BEYOND THE REACH OF 18 U.S.C. § 1512(c)(2)**

In count five of the Indictment, Mr. Sandlin is charged with Obstruction of an Official Proceeding under 18 U.S.C. § 1512(c)(2).  18 U.S.C. §1512(c), of which §

1512(c)(2) is obviously a part, was enacted by the Sarbanes-Oxley Act as an amendment to 18 U.S.C. § 1512.  Sarbanes-Oxley Act, Pub. L. No. 107-204, § 1102, 116 Stat. 807 (2002). As enacted by the Sarbanes-Oxley Act, 18 U.S.C. 1512(c) states:

> Whoever corruptly—
>
> (1)     alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do, with the intent to impair the object's integrity or availability for use in an official proceeding; or
>
> (2)     otherwise obstructs, influences, or impedes any official proceeding, or attempts to do,
>
> Shall be fined under this title or imprisoned for not 20 years, or both.

§ 1512(c)(1) and § 1512(c)(2) describe separate conduct.  However, both provisions share an introductory phrase that describes the mens rea element ("corruptly") that jointly applies to both provisions and a concluding phrase that indicates the punishment that jointly applies to both provisions.  All of this indicates that the two provisions are part of the same whole and to be understood in reference to each other.  The structure of § 1512(c) thus indicates that Congress intended for the conduct described in § 1512(c)(2) to be understood as being of the same type as the conduct described in § 1512(c)(1).  Understanding § 1512(c)(2) in this way means that the provision can, at the most, only be read is to apply to conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations.  Because the conduct that Mr. Sandlin is charged with in count five of the Indictment is not conduct that could have affected the January 6 congressional hearing to count the Electoral College votes in this way, it fails to state an offense under § 1512(c)(2).

A finding that § 1512(c)(2) can, at the most, only be read to apply to conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations—and that it does not therefore apply to the conduct that Mr. Sandlin is charged with in count five of the Indictment—is compelled by a reading of Yates v. United States, 135 S.Ct. 1074 (2015) and Begay v. United States, 553 U.S. 137 (2008).  That such a finding is correct is confirmed by the fact that Congress enacted § 1512(c) as an amendment to 18 U.S.C. § 1512 through the Sarbanes-Oxley Act, which was passed due to concerns about evidence destruction in light of the Enron/Arthur Andersen scandal, and inserted it into § 1512's pre-existent scheme to combat the suppression and corruption of evidence, testimony, and information that might be relevant at an official proceeding.  Additionally, such a finding is required to keep § 1512(c)(2) from running afoul of due process on vagueness grounds.  To the extent there is a question as to whether § 1512(c)(2) cannot be read to reach the conduct that Mr. Sandlin is charged with in count five of the Indictment, the rule of lenity requires resolving the question in Mr. Sandlin's favor.

## A.    Yates and Begay

In Yates, the Supreme Court engaged a classic fact pattern involving a commercial fisherman who had directed members of his crew to throw some grouper overboard after a federal resource-management officer had issued him a citation for possession of undersized fish.  135 S.Ct at 1079-80.  For his actions, the fisherman ended up getting charged with a violation of 18 U.S.C. § 1519—a felony carrying up to a twenty-year sentence.  Id. at 1520.  18 U.S.C. § 1519 makes it a crime to "alter[],

destroy[], mutilate[], conceal[], cover[] up, falsif[y], or make[] false entry in <u>any record,</u> <u>document, or tangible object</u>" in relation to certain types of investigations, matters, and cases.  18 U.S.C. § 1519 (emphasis added).  The charge against the fisherman obviously contemplated that the grouper that were thrown overboard were "tangible object[s]" for the purposes of the statute.  The fisherman was convicted at trial, and he appealed to the Eleventh Circuit.  <u>Id.</u> at 1080-81.  At trial and before the Eleventh Circuit, the fisherman argued that the term "tangible object" in § 1519 had to be understood within the context of its placement with the words "record" and "document" and thus that the term only applied to tangible objects that were of a type with a "record" or "document."  The fisherman argued that, while it is undeniable that a fish is a tangible object, it is not a "tangible object" in the same sense that § 1519 uses that term.   His argument fell on deaf ears.  <u>Id.</u> at 1080-81.  The Supreme Court reversed.  <u>Id.</u> at 1081.

        In reversing the Eleventh Circuit's judgment, a four-Justice plurality of the Supreme Court noted that 18 U.S.C. § 1519 was created through the Sarbanes-Oxley Act (the same act that created 18 U.S.C. §1512(c), under which Mr. Sandlin is charged).  The plurality noted that the Sarbanes-Oxley Act "was prompted by the exposure of Enron's massive accounting fraud and revelations that the company's outside auditor, Arthur Andersen, LLP, had systematically destroyed potentially incriminating documents." <u>Yates</u>, 135 S.Ct. 1081.  Against this backdrop, the plurality then went on to determine that the term "tangible object" in § 1519 is only meant to refer to tangible objects that are of a type with a "record" or "document" and not just to "all objects in the physical world."  <u>Id.</u> at 1081.  The four-Justice plurality indicated that this conclusion was

compelled by use of the interpretive canons of <u>noscitur a sociis</u> (it is known by its

company) and <u>ejusdem generis</u> (of the same kind). <u>Id.</u> at 1085-86.  In this, they were

joined by a fifth Justice.  <u>Id.</u> at 1089-90.  As the plurality explained, under the <u>noscitur a

sociis</u> canon, a term should not be ascribed "a meaning so broad that it is inconsistent

with its accompanying words, thus giving unintended breadth to the Acts of Congress."

<u>Id.</u> at 1085 (quoting <u>Gustafson v. Alloyd Co.</u>, 513 U.S. 561, 575 (1995)).  Under the

<u>ejusdem generis</u> canon, "[w]here general words follow specific words in a statutory

enumeration, the general words are [usually] construed to embrace only objects similar in

nature to those objects enumerated by the preceding specific words."  <u>Id.</u> at 1086 (<u>quoting</u>

<u>Washington State Dept. of Social and Health Servs. v. Guardianship Estate of Keffeler</u>,

537 U.S. 371, 384 (2008)) ("[usually]" added in <u>Yates</u>).  By applying the <u>noscitur a sociis</u>

canon and the <u>ejusdem generis</u> cannon to the phrase "any record, document, or tangible

object" in § 1519, the four-Justice plurality and the concurring Justice determined that

"tangible object" should not be understood to be something of a type different than

"record" or "document."  <u>Yates</u>, 135 S.Ct. 1087, 1089.  As to the latter interpretive

cannon, the plurality further elaborated, "We typically use <u>ejusdem generis</u> to ensure that

a general word will not render specific words meaningless."  <u>Id.</u> (quoting <u>Transp., Inc. v.</u>

<u>Alabama Dept. of Revenue</u>, 131 S.Ct 1101, 1113 (2011)).  The plurality then went on,

"Had Congress intended 'tangible object' in § 1519 to be interpreted so generically as to

capture physical objects as dissimilar as documents and fish, Congress would have had

no reason to refer specifically to 'record' or 'document' [in the first place]."  <u>Yates</u>, 135

S.Ct at 1088.

Prior to Yates, the Supreme Court had confronted a similar issue of statutory interpretation in Begay v. United States, 553 U.S. 137 (2008).  In Begay, the Court was dealing with the Armed Career Criminal Act.  Id. at 139-40.  Under that act, a felon who is convicted of unlawfully possessing a firearm under 18 U.S.C. § 922(g) is subject to a fifteen-year mandatory minimum sentence if he has three prior convictions for either "a violent felony or a serious drug offense."  18 U.S.C. § 924(e)(1).  At the time that Begay was decided, a "violent felony" was defined as:

> [A]ny crime punishable by imprisonment for a term exceeding one year... that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]

18 U.S.C. § 924(e)(2)(B) (emphasis added).[1]  In Begay the Court addressed whether a prior conviction for driving under the influence (DUI) qualified as a violent felony under § 924(e)(2)(B)(ii) on the theory that it is a crime that "otherwise involves conduct that presents a serious potential risk of physical injury to another."  Id. at 140.   Noting that "[d]runk driving is an extremely dangerous crime," the Court concluded that it is correct to say that "DUI involves conduct that 'presents a serious potential risk of physical injury to another.'"  Id. at 141.  However, the Court went on, "Even so, we find that DUI falls outside the scope of clause (ii).  It is too unlike the provision's listed examples [burglary,

---

[1] The underlined language represents the so-called "residual clause" that was later declared unconstitutional by the Court on due-process (vagueness) grounds in Johnson v. United States, 135 S.Ct 2551 (2015).

arson, extortion, or crimes involving explosives] for us to believe that Congress intended the provision to cover it." Id. at 142.

In reaching the above conclusion about the reach of § 924(e)(2)(B)(ii), the Court in Begay explained:

> In our view, the provision's listed examples—burglary, arson, extortion, or crimes involving the use of explosives—illustrate the kinds of crimes that fall within the statute's scope.  Their presence indicates that the statute covers only similar crimes, rather than every crime that "presents a serious potential risk of physical injury to another."  § 924(e)(2)(B)(ii).  If Congress meant the latter, i.e., if it meant the statute to be all encompassing, it is hard to see why it would have needed to include the examples at all.  Without them, clause (ii) would cover all crimes that present a "serious potential risk of physical injury."  Ibid.  Additionally, if Congress meant clause  (ii) to include all risky crimes, why would it have included clause (i)?  A crime which has as an element the "use, attempted use, or threatened use of physical force" against the person (as clause (i) specifies) is likely to create "a serious potential risk of physical injury" and would seem to fall within the scope of clause (ii).

Begay, 553 U.S. at 142 (emphases in original).  The Court then went on, "'[T]o give effect… to every clause and word' of this statute, we should read the examples as limiting the crimes that clause (ii) covers to crimes that are roughly similar, in kind as well as in degree of risk posed, to the examples themselves."  Id. at 142 (quoting Duncan v. Walker, 533 U.S. 167, 174 (2001).

## B. Interpreting § 1512(c)(2) in Light of Yates and Begay

Under Yates and Begay, the conduct described in 18 U.S.C. § 1512(c)(2), under which Mr. Sandlin is charged—"obstruct[ing], influence[ing], or imped[ing] [an] official proceeding, or attempt[ing] to do so"—must be understood as being of the same type as the conduct described in its companion provision, 18 U.S.C. § 1512(c)(1)—"alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object, or

8

attempt[ing] to do so, with the intent to impair the object's integrity or availability for use in an official proceeding."  The interpretive canon of <u>noscitur a sociis</u> requires that the conduct described in § 1512(c)(2) be understood as being of the same character as the conduct described in § 1512(c)(1), and the <u>ejusdem generis</u> canon requires that the conduct described in § 1512(c)(2), which is set out in general terms, not be read to embrace meanings broader in nature than the conduct described in § 1512(c)(1), which is set out in more specific terms.  Accordingly, given that the conduct described in § 1512(c)(1) is conduct that can affect an official proceeding by impacting its ability to consider records, documents, and other objects, the conduct described in § 1512(c)(2) cannot be read to include conduct of a different type.  For this reason, § 1512(c)(2) can, at the most, only be understood to reach conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations.

At this point, it should be stressed that, unless the language of § 1512(c)(2) is interpreted as being limited by the language of § 1512(c)(1) as just described, § 1512(c)(1) becomes a superfluity.  If Congress did not intend for § 1512(c)(2)'s reach to be limited to conduct similar in type to the conduct described in § 1512(c)(1) and if it therefore meant for § 1512(c)(2) to reach all conduct that "obstructs, influences, or impedes [an] official proceeding, or attempts to do so" as a general matter, it would not have even bothered to have included §1512(c)(1) at all when it was enacting §1512(c) in the first place.  Certainly, conduct related to "obstruct[ing], influenc[ing], or imped[ing] [an] official proceeding, or attempt[ing] to do so" as a general matter would necessarily include all conduct related specifically to "alter[ing], destroy[ing], mutilat[ing], or

conceal[ing] a record, document, or other object, or attempt[ing] to do, with the intent to impair the object's integrity or availability for use in an official proceeding."  For this reason, too, the cannon of ejusdem generis requires a non-expansive reading of § 1512(c)(2).  See Yates, 135 S.Ct at 1088 ("We resist a reading of [a statutory provision] that would render superfluous an entire provision passed in proximity as part of the same Act."); Marx v. General Revenue Corp., 133 S.Ct. 1166, 1178 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").

### C.    Confirmatory Factors

That Congress intended for § 1512(c)(2) to, at the most, only reach conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations—and not just all conduct that "obstructs, influences, and impedes [an] official proceeding, or attempts to do so" as a general matter—is confirmed by consideration of other factors.  For starters, like 18 U.S.C. § 1519 (the provision at issue in Yates), 18 U.S.C. § 1512(c) was also created by the Sarbanes-Oxley Act and thus similarly informed by that act's focus, in the wake of the Enron/Arthur Andersen scandal, on criminalizing the destruction of documents that could have evidentiary value.  Beyond this, in enacting § 1512(c), Congress chose to make it a part of the scheme that it had already put in place in 18 U.S.C. § 1512.  Tellingly, § 1512 is entitled, "Tampering with a witness, victim, or informant,"[2] and in addition to § 1512(c),

---

[2] "The title of a statute or section can aid in resolving an ambiguity in the legislation's text."  I.N.S. v. Nat'l Ctr. for Immigrants' Rts., Inc., 502 U.S. 183, 189 (1991).

it contains three other proscriptive provisions: § 1512(a), § 1512(b), and § 1512(d).

When § 1512 was amended to include the current § 1512(c), the old § 1512(c) was

redesignated as §1512(d).  Pub L. 107-204, § 1102, 116 Stat. 807 (2002).  Given that the

current § 1512(c) was thus inserted into the middle of § 1512's three other proscriptive

provisions, these three other provisions clarify the type of conduct that § 1512 seeks to

proscribe and thus shed light on the type of conduct that Congress also intended for §

1512(c)(2) to proscribe.  "A statutory provision that may seem ambiguous in isolation is

often clarified by the remainder of the statutory scheme [it is placed in] because only one

of the permissible meanings produces a substantive effect that is compatible with the rest

of the law. "  Util. Air Regulatory Grp. v. E.P.A., 573 U.S. 302, 321 (2014).   A review of

§ 1512(a), § 1512(b), and § 1512(d) shows that each one proscribes only conduct that is

intended to cause the suppression or corruption of testimony, evidence, and information

that could be relevant at an official proceeding: § 1512(a) proscribes murder or attempted

murder and the use of force, threats of force, or attempts to use force or threats of force

that has such intent, § 1512(b) proscribes intimidation, threats, and corrupt persuasion

that has such intent, and § 1512(d) proscribes harassment that has such intent.

    **D.**      **Failure to State an Offense**

Given that § 1512(c)(2) can, at the most, only be read to apply to conduct that,

like the conduct described in § 1512(c)(1), can affect an official proceeding by impacting

the state and content of what it might consider in making its deliberations, count five of

the Indictment, which charges Mr. Sandlin with a violation of § 1512(c)(2), must be

dismissed for failure to state an offense.  In count five of the Indictment, it is charged

that, "[o]n or about January 6, 2021, within the District of Columbia and elsewhere, [Mr.] Sandlin[] attempted to, and did, corruptly obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder, and engaging in disorderly and disruptive conduct."  Indictment at 3 (emphasis added).  But none of the alleged conduct by Mr. Sandlin described in the underlined phrase is conduct that could have affected the specified official proceeding by impacting the state and content of what it might have considered in making its deliberations.  While the conduct that Mr. Sandlin is charged with in count five might have disrupted the official proceeding and hindered its operation, conduct along those lines is nevertheless beyond § 1512(c)(2)'s ambit.

### E.    Due Process

Reading § 1512(c)(2) to not reach the conduct that Mr. Sandlin is charged with in count five of the Indictment is not only required by a proper textual reading of § 1512(c), but it is also required to keep § 1512(c)(2) from running afoul of due process on vagueness grounds.  As a basic matter of statutory interpretation, courts are to presume that "Congress intended the interpretation [of the provision under consideration] which is constitutionally permissible."  United States v. Thompson, 452 F.2d 1333, 1337 (D.C. Cir. 1971) (citing Gutknecht v. United States, 396 U.S. 295 (1970); United States v. Rumely, 345 U.S. 41, 45 (1953)).  Accordingly, when an "interpretation of a statute would create a substantial doubt as to the statute's constitutional validity, the courts will avoid that interpretation absent a "clear statement" of a contrary legislative intent."

Thompson, 452 F.2d at 137.  Here, for criminal liability to attach to conduct under §
1512(c)(2), the conduct at issue must of course be engaged in "corruptly."  18 U.S.C.
§1512(c).  Even so, if § 1512(c)(2) is in fact understood as being divorced from §
1512(c)(1) and thus as being intended to cover all conduct that relates to "obstruct[ing],
influence[ing], or imped[ing] [an] official proceeding, or attempt[ing] to do so," as a
general matter, § 1512(c)(2) is still unconstitutionally vague even when read to include
the "corruptly" scienter.

A criminal statute is unconstitutionally vague if it "'fails to give ordinary people
fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary
enforcement.'"  United States v. Bronstein, 849 F.3d 1101, 1106 (D.C. Cir. 2017)
(quoting Johnson v. United States, 135 S.Ct 2551, 2556 (2015)).  "The void-for-
vagueness doctrine . . . guarantees that ordinary people have 'fair notice' of the conduct a
statute proscribes.  And the doctrine guards against arbitrary or discriminatory law
enforcement by insisting that a statute provide standards to govern the actions of police
officers, prosecutors, juries and judges."  Sessions v. Dimaya, 138 S. Ct. 1204, 1212
(2018) (citing Kolender v. Lawson, 461 U.S. 352, 358 (1983)).

Here, if the language in § 1512(c)(2) is read to reach beyond conduct that can
affect an official proceeding by impacting the state and content of what it might consider
in making its deliberations and thus to all conduct that "corruptly… obstructs, influences,
or impedes [an] official proceeding, or attempts to do so" as a general matter, it is hard
see how § 1512(c)(2) would not be overly vague.  This is best illustrated by looking at the
issue through the lens of arbitrary enforcement.  Given that § 1512(c)(2) only reaches the

conduct that Mr. Sandlin is charged with in count five of the Indictment if it is read to include all conduct that could be described as "corruptly… obstruct[ing], influenc[ing], or imped[ing] [an] official proceeding, or attempt[ing] to do so" as a general matter, it is clear that this broad reading of the provision is the one that the government is using to prosecute Mr. Sandlin in connection with the congressional hearing to count the Electoral College votes that occurred at the United States Capitol on January 6, 2021.  However, at present almost 600 people have been charged in relation to this event, and it appears that the majority of them are alleged to have entered into the Capitol building at a time when their presence would have interfered with that hearing.  Indeed, these people appear to have done much, if not all, of what Mr. Sandlin is charged with in count five of the Indictment—that is, they are alleged to have engaged in conduct that involves "enter[ing] and remain[ing] in the United States Capitol without authority and commit[ting] an act of civil disorder, and engag[ing] in disorderly and disruptive conduct."  Yet it also appears that a great many of these people are not being prosecuted for an offense under § 1512(c)(2).  Also, since § 1512(c)(2)'s enactment in 2002, people have routinely disrupted hearings—not just before Congress but elsewhere, too—that would appear to meet the definition of an "official proceeding" under § 1512(c)(2).  It appears that many of these people have not been prosecuted under § 1512(c)(2) either.

Given all this, it is does not appear that there is a statutorily-based standard that the government is using for its broad reading of § 1512(c)(2) that would explain why Mr. Sandlin is being singled out for prosecution under the provision.  It s submitted that, if Mr. Sandlin's prosecution is not in fact arbitrary, the government should be able to

articulate a credible statutorily-based standard that would explain why it thinks his alleged conduct falls under its broad reading of § 1512(c)(2) in a way that also accounts for why it has failed to charge not only other persons whose alleged conduct would have disrupted the counting of the Electoral College votes on January 6 but also persons who have disrupted official proceedings in the past.  Such an explanation is not known to exist.  Accordingly, it would appear that reading § 1512(c)(2) to include all conduct that could be described as "corruptly… obstruct[ing], influenc[ing], or imped[ing] [an] official proceeding, or attempt[ing] to do so" as a general matter, which is the reading that the government is using to prosecute Mr. Sandlin, does not adequately protect against arbitrary enforcement and thus runs afoul of due process on vagueness grounds.  See Johnson, 135 S.Ct at 2558 ("repeated failures to craft a principled and objective standard out of [a statutory provision] confirm its hopeless indeterminacy").  Accordingly, such a reading of § 1512(c)(2) must be rejected in favor of the reading that construes the provision as, at the most, only reaching conduct that can affect an official proceeding by impacting the state and content of what it might consider in making its deliberations and thus as being inapplicable to the conduct that Mr. Sandlin is charged with in count five of the Indictment.  Therefore, in addition to finding that that § 1512(c)(2) does not reach the conduct that Mr. Sandlin is charged with in count five as a matter of basic textual analysis, it must also be found that it does not reach his charged conduct in order to keep the provision from running afoul of due process.

### F.      The Rule of Lenity

To the extent there would be a question as to whether § 1512(c)(2) can be read to reach the conduct that Mr. Sandlin is charged with in count five of the Indictment, the rule of lenity still requires that this question be resolved in Mr. Sandlin's favor.   Indeed, in Yates, the plurality of the Supreme Court, after finding that the term "tangible object" in § 1519 only applied to objects of a type with "record" or "document," affirmed its finding with the rule of lenity: "[I]f our recourse to traditional tools of statutory interpretation leaves any doubt about the meaning of 'tangible object,' as that term is used in § 1519, we would invoke the rule that "ambiguity concerning the ambit of criminal statutes should be resolved for lenity." Yates, 135 S.Ct. at 1088 (quoting Cleveland v. United States, 531 U.S. 12, 25 (2000)).  Accordingly, the plurality concluded, "In determining the meaning of 'tangible object' in § 1519, 'it is appropriate, before we choose the harsher alternative, to require that Congress should have spoken in language that is clear and definite.'" Yates, 135 S.Ct at 1088 (quoting Cleveland, 531 U.S. at 25.  The rule of lenity applies no less in Mr. Sandlin's case than it did in Yates.

At this point it must be stressed that, even if it seems likely that § 1512(c)(2) does reach the kind of conduct that Mr. Sandlin is charged with in count five of the Indictment, this would still not be sufficient to find that count five does in fact state an offense.  As the Supreme Court has stated, "[P]robability is not a guide which a court, in construing a penal statute, can safely take."  United States v. Santos, 553 U.S. 507, 515 (2008) (quoting United States v. Wiltberger, 18 U.S. 76 (1820)).  Accordingly, where a differing view regarding the meaning of a statute is not "unambiguously correct," courts must

"apply the rule of lenity and resolve the ambiguity in [the defendant's] favor." United States v. Granderson, 511 U.S. 39, 54 (1994).  Especially when viewed with an appreciation of the rule of lenity, § 1512(c)(2) cannot be read to reach the conduct that Mr. Sandlin is charged with in count five of the Indictment.

## II.    COUNT FIVE OF THE INDICTMENT FAILS TO STATE AN OFFENSE BECAUSE A CONGRESSIONAL HEARING TO COUNT THE ELECTORAL COLLEGE VOTES IS NOT AN "OFFICIAL PROCEEDING" AS THAT TERM IS USED IN 18 U.S.C. § 1512(c)(2)

The statutory text of 18 U.S.C. § 1512(c)(2) explicitly states that, for conduct to be illegal under the provision, it must relate to an "official proceeding."  The congressional hearing to count the Electoral College votes at the United States Capitol on January 6, 2021 was a hearing conducted under 3 U.S.C. §15.  When looked at is isolation, the term "official proceeding" is ambiguous.  However, contextual considerations show that, for the purposes of § 1512, Congress did not intend for term "official proceeding" to apply to a congressional hearing to count the Electoral College votes.  Thus, in addition to not stating an offense under § 1512(c)(2) because it does not charge Mr. Sandlin with conduct that could have affected an official proceeding by impacting the state and content of what such a hearing might consider in making its deliberations, count five of the Indictment also fails to state an offense under § 1512(c)(2) because the proceeding that it states Mr. Sandlin's conduct was related to—the congressional hearing to count the Electoral College votes that occurred at the United States Capitol on January 6, 2021—is not an "official proceeding" for the purposes of the provision.  To the extent there is a question as to whether a congressional hearing to

count the Electoral votes is an "official proceeding" for the purposes of § 1512(c)(2), the

rule of lenity requires resolving the question in Mr. Sandlin's favor.

### A.    What is an Official Proceeding?

18 U.S.C. § 1515(a)(1) defines the term "official proceeding" for the purposes of

§ 1512 generally—and thus §1512(c)(2) specifically.  §1515(a)(1) states:

> [T]he term "official proceeding" means—
>
> (A) a <u>proceeding</u> <u>before</u> a judge or court of the United States, a United States
>        magistrate judge, a bankruptcy judge, a judge of the United States Tax
>        Court, a special trial judge of the Tax Court, a judge of the United States
>        Court of Federal Claims, or a Federal grand jury;
>
> (B) a <u>proceeding</u> <u>before</u> the Congress;
>
> (C) a <u>proceeding</u> <u>before</u> a Federal Government agency which is authorized by
>        law; or
>
> (D) a <u>proceeding</u> involving the business of insurance whose activities affect
>        interstate commerce <u>before</u> any insurance regulatory official or agency or
>        any agent or examiner appointed by such official or agency to examine the
>        affairs of any person engaged in the business of insurance whose activities
>        affect interstate commerce[.]

<u>Id.</u> (emphases added).

It is noteworthy that § 1515(a)(1) defines the term "official proceeding" in § 1512

by simply providing a laundry list of  "proceeding[s]" occurring "before" various entities

and persons that the term is meant to include.  In doing this, § 1515(a)(1) does not try to

define what it actually means by the word "proceeding," thus leaving the word

"proceeding" open to interpretation.  This is a problem because, as the Ninth Circuit

noted in <u>United Sates v. Ermoian</u>, 752 F.3d 1165, 1169-70  (9th Cir. 2013) the word

"proceeding" has a range of meanings:

"Proceeding" has been defined in various ways, ranging from the broad to the specific.  But an account of both lay and legal dictionaries suggests that definitions of the term fall into one of two categories: "proceeding" may be used either in a general sense to mean "[t]he carrying on of an action or series of actions; action, course of action; conduct, behavior" or more specifically as a legal term to mean "[a] legal action or process; any act done by authority of a court of law; a step taken by either party in a legal case." Proceeding, Oxford English Dictionary, available at http://www.oed.com; see also Black's Law Dictionary 1241 (8th ed. 2004) (defining proceeding either narrowly as (1) "[t]he regular and orderly progression of a lawsuit, including all acts and events between the time of commencement and the entry of judgment;" (2) "[a]ny procedural means for seeking redress from a tribunal or agency;" and (3) "[t]he business conducted by a court or other official body; a hearing" or more broadly as "an act or step that is part of a larger action.").

Id. at 1169.

"The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as whole."  Robinson v. Shell Oil Co., 519 U.S. 337, 341 (1997). Here, given that word "proceeding" can have various meanings, the term "official proceeding" in § 1512—and thus in § 1512(c)(2)—remains similarly ambiguous notwithstanding § 1515(a)(1)'s attempt at defining it.  Thus, it is appropriate to look at how the word "proceeding" in § 1515(a)(1) and the term "official proceeding" in § 1512 are used in context to better understand what meaning Congress intended for the term "official proceeding" to have in §1512(c)(2).  Doing so shows that what Congress meant by "official proceeding" in § 1512—and thus in § 1512(c)(2)—is a court-like proceeding that has the ability to secure witness testimony and evidence for purposes related to the administration of justice.  This is also borne out by considering how § 1512 fits within its statutory scheme in Chapter 73 of Title 18, United States Code.  See Util. Air Regulatory

Grp., 573 U.S. at 321 (the legislative intent behind a statutory provision can be revealed by looking at the broader statutory scheme the provision is a part of).

### 1.  § 1515(a)(1)

Looking at the context of the word "proceeding" in § 1515(a)(1) shows that, in using that word to define the term "official proceeding" in § 1512, Congress was not intending for the word to refer to all proceedings in the general sense.  Rather, it was intending for it to refer only to proceedings that are essentially court-like.  On this point, Ermoian, 752 F.3d 1165, and United States v. Ramos, 537 F.3d 439 (5th Cir. 2008) are instructive.

In Ermoian, the Ninth Circuit was dealing with an alleged violation of § 1512(c)(2) where two defendants were charged with obstructive conduct in relation to an ongoing FBI investigation.  752 F.3d at 1165-68.  In deciding whether an FBI investigation was actually an "official proceeding" for the purposes of § 1512(c)(2), the court looked at the word "proceeding" in the context § 1515(a)(1) and took note of how "[s]everal aspects of the [provision] suggest that the legal—rather than the lay— understanding of the term 'proceeding' is implicated."  Id. at 1170.  For starters, the court noted that the term "official proceeding," which § 1515(a)(1) seeks to define contains "the descriptor 'official.'"  Ermoian, 752 F.3d at 1170.   The court stated that this indicates a sense of formality normally associated with legal proceedings."  Id.  Beyond this, the court pointed to the fact that, as used in § 1515(a)(1), the word "proceeding" is "surrounded with other words that contemplate a legal usage of the term, including 'judge or court,' 'Federal grand jury,' 'Congress,' and 'Federal government agency.'"  Id.  The

court went on to note that, when used in legal contexts, "'Proceeding' is a word much used to express the <u>business done in courts</u>.'" <u>Id</u>. (<u>quoting</u> Edwin E. Bryant, <u>The Law of Pleading under the Codes of Civil Procedure</u> (2d ed. 1899) (emphasis in <u>Ermoian</u>).  Also, turning to the fact that § 1515(a)(1) defines "official proceeding" to include a "proceeding <u>before</u> a Federal Government Agency [emphasis added]," the court went on to point out that the "use of the preposition 'before' suggests an appearance in front of an agency <u>sitting as a tribunal</u>." <u>Id.</u> at 1171 (<u>quoting</u> 18 U.S.C. § 1515(a)(1)(C)) (emphasis added).

Prior to <u>Ermoian</u>, in <u>United States v. Ramos</u>, 537 F.3d 439 (5th Cir. 2008), the Fifth Circuit confronted a situation where two Border Patrol agents had allegedly violated § 1512(c)(2) by interfering with a Border Patrol investigation into their alleged misconduct.  <u>Id.</u> at 447.  Just as the Ninth Circuit later did in <u>Ermoian</u>, the Fifth Circuit looked at the word "proceeding" in the context of § 1515(a)(1) to determine what Congress meant by the term official proceeding in § 1512(c)(2).  <u>Id.</u> at 462.  Like the Ninth Circuit, the Fifth Circuit found it important that, in defining "official proceeding" in § 1515(a)(1) to include a "proceeding <u>before</u> a Federal Government agency [emphasis added]," Congress used the preposition "before."  <u>Id.</u> at 463 (<u>quoting</u> 18 U.S.C.  § 1515(a)(1)(C)).  The court found that this shows that the type of proceeding that Congress was referring was a proceeding that "involves some formal convocation of the agency <u>in which parties are directed to appear</u>." <u>Id.</u> at 462-63 (emphasis added).

## 2.  § 1512

While looking at word "proceeding" in the context § 1515(a)(1) indicates that Congress intended the term "official proceeding" in § 1512 to refer to court-like proceedings, looking at that term itself in the broader context of § 1512 shows that what Congress thought makes a proceeding sufficiently court-like to be considered an "official proceeding" for the purposes of the provision is the ability to secure witness testimony and evidence.  This detail provides a ready way to differentiate what is an "official proceeding" in the sense that Congress intended from one that is not.  Again, Ermoian, 752 F.3d 1165, and Ramos, 537 F.3d 439, are instructive.

In Ermoian, in looking at the term "official proceeding" in the context of § 1512, the Ninth Circuit identified the features that make a proceeding sufficiently like a "tribunal" to qualify as "official proceeding" under the statute:

> Section 1512 refers to "prevent[ing] the attendance or testimony of any person in an official proceeding"; "prevent[ing] the production of a record, document, or other object, in an official proceeding"; and "be[ing] absent from an official proceeding to which that person has been summoned by legal process."  18 U.S.C. § 1512(a)(1)(A)-(B), (a)(2)(B)(iv).  The use of the terms 'attendance,' 'testimony,' 'production,' and 'summon[]' when describing an official proceeding strongly implies that some formal hearing before a tribunal is contemplated."

Id. at 1172 (emphasis added).  With that said, the court then went on to find that the FBI investigation it was considering did not qualify as "official proceeding" under the statute. Id.  Similarly, in Ramos, in finding that a Border Patrol investigation was not an "official proceeding" for the purposes of § 1512, 537 F.3d at 462, the Fifth Circuit noted that the term "official proceeding" is "consistently used throughout § 1512 in a manner that contemplates a formal environment in which persons are called to appear or produce

documents." Id. at 463 (emphasis added); accord United States v. Binette, 828 F. Supp. 2d 402 (D. Mass. 2011) (where SEC personnel conducting an investigation did not have the power to "issue subpoenas or compel attendance or testimony," the investigation did not qualify as an "official proceeding" under § 1512(c)(2)). Id. at 404-05.

In addition to finding that the term "official proceeding" in consistently used in §1512 in such a way to indicate that Congress intended for it to apply to proceedings where witness testimony and evidence can be secured, the court in Ramos also found another clue that provides a way to distinguish a proceeding that is a an "official proceeding" in the sense Congress intended from one that is not.  In Ramos the court noted that in enacting 18 U.S.C. § 1512, Congress declared the purpose of the statute is "to enhance and protect the necessary role of crime victims and witnesses in the criminal justice system."  537 F.3d at 462 (quoting  Pub. L. No. 97-291, § 2, 96 Stat. 1258 (1982)).  This declaration of legislative intent strongly indicates that Congress intended the term "official proceeding" as used in § 1512 to refer to a proceeding related to the administration of justice.  This conclusion is further underscored by the fact that, when it enacted § 1512, Congress entitled it, "Tampering with a witness, victim, or informant." Though the current version § 1512(c) was only added to § 1512 as an amendment in 2002 by the Sarbanes-Oxley Act, see supra at 2, the fact remains that, through that act, Congress chose to place the provision in the context of other provisions that were designed to enhance the administration of justice.

### 3.  Chapter 73

That Congress intended for the word "proceeding" in § 1515(a)(1) and the term "official proceeding" in § 1512 to apply to court-like hearings that have the ability to secure witness testimony and evidence for purposes related to the administration of justice is further borne out by considering § 1512 in the context of Chapter 73 of Title 18, United States Code.  Chapter 73 of Title 18, United States Code, which is entitled, "OBSTRUCTION OF JUSTICE" contains 18 U.S.C §§ 1501-1521. A review of those provisions shows that they are designed to secure the integrity of tribunal-like proceedings where witness testimony and evidence can be secured to aid the administration of justice.  See, e.g., 18 U.S.C. § 1501 (assault on a process sever); 18 U.S.C. § 1503 (influencing a juror generally); 18 U.S.C. § 1504 (influencing a juror in writing); 18 U.S.C. § 1508 (recording, listening to, or observing proceedings of grand or petit juries while deliberating); 18 U.S.C. § 1513 (retaliating against a victim, witness, or informant); 18 U.S.C. § 1514 (restraining civil actions that harass a victim or witness); 18 U.S.C. § 1519 (destruction, alteration, or falsification of records); 18 U.S.C. § 1520 (destruction of corporate audit records); 18 U.S.C. § 1521 (retaliating against a federal judge or law enforcement officer by false claim or slander of title).

### B.      The January 6 Hearing

The processing and counting of the Electoral College votes by Congress is conducted pursuant to rules spelled out in 3 U.S.C. § 1 et seq.  The actual hearing to count the Electoral College votes is conducted pursuant to 3 U.S.C. § 15.  At such a hearing, "certificates of electoral votes" are "presented" to Congress by "tellers" on a

state-by-state basis and "read… in the hearing of the two Houses."  After such reading of the certificates of electoral votes from each state, the votes are then "counted… and delivered to the President of the Senate, who shall thereupon announce the state of the vote, which announcement shall be deemed a sufficient declaration of the persons, if any, elected President and Vice President of the United States."  Id.  This procedure allows for no exercise of judgment on the parts of the tellers and the President of the Senate, id., and their roles must therefore be regarded as purely ceremonial or ministerial.  Moreover, it should be noted that the certificates of the electoral votes serve no role in informing any decision-making process.  To the extent they determine who will be the President and the Vice President, they do so purely by their own operation of declaring to whom the electors of the states that issued them have awarded their electoral votes.  See U.S.C. § 9.

To be sure, § 15 does permit, in some limited circumstances, for Congress to reject certificates of electoral votes that the states submit.  Congress can reject a state's certificate of electoral votes when it determines that the votes at issue "have not been regularly given by he electors whose appointment has been lawfully certified" pursuant to the state's laws.  3 U.S.C. § 15; see 3 U.S.C. § 6.  However, the procedure for making this determination does not involve calling witnesses and producing evidence.  3 U.S.C. § 15.  Rather, it only involves time-limited debate.  See 3 U.S.C. § 17.  Moreover, in those instances where a state submits more than one certificate of electoral votes, Congress can determine which certificate from that state to accept, but making this determination does not involve hearing testimony or considering evidence either.  Rather, it involves applying the set of spelled-out hierarchical rules.  3 U.S.C. § 15.

### C.      Failure to State an Offense

Given the above, a congressional hearing to count the Electoral College votes cannot be considered an "official proceeding" for the purposes of 1512(c)(2).  While it can perhaps be debated whether or not a congressional hearing to count the Electoral College votes is a court-like proceeding in the abstract, what is not debatable is that, for such a hearing, there are no provisions in place to secure witness testimony or evidence that might aid whatever decision-making needs to be done.  Indeed, the hearing does not even have the ability to make decisions based on witness testimony or evidence.  It is primarily a ceremonial proceeding that, to the extent it does involve any kind of decision-making on the part of its participants at all, does so based only on debate and the application of hierarchical rules.  Moreover, it is not a proceeding related to the administration of justice.  Accordingly, it cannot be considered an "official proceeding" for the purposes of § 1512(c)(2).  Thus, because count five of the Indictment charges Mr. Sandlin with Obstruction of an Official Proceeding under 18 U.S.C. §1512(c)(2) in relation to a congressional hearing to count the Electoral College votes, it fails to state an offense.

### D.      Rule of Lenity

To the extent there is doubt that a congressional hearing to count the Electoral College votes does not qualify as an "official proceeding" under § 1512(c)(2), the rule of lenity would still require finding that it cannot be considered one.  Indeed, this would be the case even if it is found that such a hearing probably is an official proceeding for the purposes of § 1512(c)(2).  In Ramos, 537 F.3d 439, in concluding that an informal,

internal U.S. Border Patrol hearing regarding Border Patrol agents' misconduct was not

an "official proceeding" under § 1512(c)(2), the Fifth Circuit indicated that, even if it was

not confident that it had reached the right decision on the merits, the rule of lenity would

have still required the same conclusion.  Id. at 463-64.  The court explained that such a

conclusion would be required unless it could "say with certainty that Congress intended"

a different understanding of what "official proceeding" meant in § 1512.  Id. at 464.  This

is because "we 'resolve ambiguity in criminal statutes by construing such statutes

narrowly.'"  Id. (quoting United States v. Marek, 238 F.3d 310, 327 (5th Cir. 2001) (en

banc)).  Thus, to the extent there might have been any questions about its holding that the

Border Patrol hearing it was considering was not an "official proceeding" under §

1512(c)(2), the court stated, "[W]e alternatively hold that the rule of lenity requires the

conclusion that 'official proceeding' in § 1512(c) does not embrace the agency

investigation at issue here."  Ramos, 537 F.3d at 464; accord Binette, 828 F.Supp.2d at

404.  Such an alternative holding is required in Mr. Sandlin's case as well,

## **CONCLUSION**

Count five of the Indictment fails to state an offense involving Mr. Sandlin

because the conduct for which it charges him with Obstruction of an Official Proceeding

under 18 U.S.C. § 1512(c)(2) is not conduct that is covered by the provision.

Additionally, count five fails to state an offense involving Mr. Sandlin because the

hearing his alleged conduct is said to have been related to—the congressional hearing to

count the Electoral College votes—is not an "official proceeding" for the purposes of the

provision.  Each of these failures on the part of count five to state an offense involving

Mr. Sandlin provides an independent basis to dismiss the count under Fed. R. Crim. P.

12(b)(3)(B)(v).

   WHEREFORE, the defendant, Ronald Sandlin, moves this Honorable Court to

dismiss count five of the Indictment for failure to state an offense

        Respectfully submitted,

        _____/s/_____
        Jerry Ray Smith, Jr.
        D.C. Bar No. 448699
        Counsel for Ronald Sandlin
        717 D Street, N.W.
        Suite 310
        Washington, DC 20004
        Phone: (202) 347-6101
        E-mail: jerryraysmith@verizon.net