UNITED STATES DISTRICT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** ) | |
| ) | |
| **v.** ) | Case No. 21-cr-00088-DLF |
| ) | |
| **RONALD SANDLIN, ET AL,** ) | |
| ) | |
| Defendants. ) | |

# DEFENDANT DEGRAVE'S REPLY MEMORANDUM IN SUPPORT OF DEFENDANT SANDLIN'S MOTION TO DISMISS

John M. Pierce
355 S. Grand Avenue, 44th Floor
Los Angeles, CA 90071
Tel: (213) 400-0725
Email: jpierce@piercebainbridge.com

*Attorney for Defendant Nathaniel DeGrave*

**INTRODUCTION**

A ceremonial meeting of the two Houses of Congress where they serve no constitutional function other than as witnesses is not an "official proceeding". That is the only legitimate constitutional role of the Congress with regard to the counting of electoral votes.

Every other action by Senators and Representatives beyond serving as witness is a usurpation of authority not granted to them by the United States Constitution and the Amendments thereto. Because the presence of Congress on January 6 was a ceremonial function, it falls outside the scope of an "official proceeding" as used by Congress in drafting Section 1512(c) – whatever that term may mean.

If "corruptly obstructing an official proceeding" is prohibited by Section 1512(c), then "non-corruptly obstructing an official proceeding" must be lawful. The exception – acting "corruptly" – establishes the rule, i.e., obstruction of an official proceeding is otherwise not a crime.

A system of laws cannot function on the government's proffered mechanism for distinguishing lawful from unlawful obstruction in this circumstance -- "The jury will figure it out." It is legal sophistry to claim that the defects in the statute raised by this motion will be solved by this Court fashioning instructions for a lay jury to distinguish "corrupt" obstruction from "non-corrupt" obstruction.

But that is the secondary consideration, not the primary one. The more important problem exposed by this motion is that the language employed by Congress in writing Section 1512(c) does not provide clear and fair warning to the governed about where the line is drawn between those two types of "obstruction". The drafting of Section 1512(c) came only after the appellate court in this Circuit put Congress on notice that the use of the term "corruptly" in Section 1505 did not meaningfully describe illegal conduct in a constitutionally sufficient manner.

1

> "[A] statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application, violates the first essential of due process of law. Connally v. General Construction Company, 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322 (1926). In particular, a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct it prohibits, and do so in a manner that does not invite arbitrary and discriminatory enforcement by which "policemen, prosecutors, and juries ... pursue their personal predilections." Kolender v. Lawson, 461 U.S. 352, 357-58, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983).

United States v. Poindexter, 951 F.2d 369, 378 (D.C. Cir. 1981)

Hence the dilemma of the defendants in this case – in advance of their approach to the Capitol on January 6, how did the language of the penal statute Section 1512(c) provide to them the "sufficient definiteness" required such that they knew where "non-corrupt" obstruction on their part ended and "corrupt" obstruction on their part is alleged to have begun?

**I.     The Meeting of Congress on January 6 was not an "Official Proceeding".**

If the meeting of Congress on January 6 was not an "official proceeding", then Counts One and Two of the Superseding Indictment fail as a matter of law, as Section 1512(c) only applies to "official proceedings."

The language of the statute is not helpful in any respect.

As the government notes in its opposition, § 1515(a)(1)(B) defines an "official proceeding" as including "a proceeding before the Congress."

By that language, an "unofficial" proceeding before Congress would not be "a proceeding before the Congress.

Is there such a thing as an "unofficial" proceeding before Congress?

Are "Special Orders" – speeches given by House Members on the floor of the House with staff members present and CSPAN cameras broadcasting – "official" or "unofficial" proceedings before Congress?

2

> Special order speeches (commonly called "special orders") usually take place at the end of the day after the House of Representatives has completed all legislative business. During the special order period, individual Representatives can deliver speeches on topics of their choice for up to 60 minutes. Special order speeches give Members a chance to speak outside the time restrictions that govern legislative debate in the House and the Committee of the Whole. These speeches also provide one of the few opportunities for non-legislative debate in the House, where debate is almost always confined to pending legislative business.

*Id.* at p. 1.

Would interfering with the television signal in order to prevent the broadcast of Special Order speeches be obstructing an "official proceeding" under Section 1512(c)?

What about [non-legislative proclamations and commissions](#) issued and/or funded by congressional funding or appropriations?

> Since its inception, Congress has used commemoratives to express public gratitude for distinguished contributions; dramatize the virtues of individuals, groups, and causes; and perpetuate the remembrance of significant events. The first commemoratives were primarily in the form of individually struck medals. During the 19th century, Congress gradually broadened the scope of commemoratives by recommending special days for national observance; funding monuments and memorials; creating federal holidays; authorizing the minting of commemorative coins; and establishing commissions to celebrate important anniversaries. In the 20th century, it became increasingly commonplace for Congress to use commemorative legislation to name buildings and other public works, scholarships, endowments, fellowships, and historic sites.

*Id.* at p. 1.

Could interference with such commemoratives or commissions created to celebrate important people, places, or things be deemed obstructing an "official" proceeding before the Congress?

If yes, is there any limiting principle with respect to what are "official" – as contrasted with "unofficial" -- proceedings before the Congress?

The government fails to address the question.  Instead it retreats to defend on the ground that no matter what the contours of "official" and "unofficial" proceedings might be, the meeting of Congress on January 6 clearly falls within any definition of an "official proceeding."  This is because of the "solemn" and "formal" nature of the proceedings set to transpire on that day.  Opp. Memo. at p. 7.

But the solemn and formal proceedings relied upon by the government are on their face unconstitutional and following through with those proceedings was an unlawful act.

The Twelfth Amendment to the United States Constitution provides the sole legitimate process for receiving and counting the votes of the Electoral College.  It does not require or suggest any "official" "Joint Session" of Congress as repeatedly referenced by the government in its opposition.  The Amendment provides, in pertinent part:

> ….The President of the Senate shall, in the presence of the Senate and House of Representatives, open all the certificates and the votes shall then be counted; the person having the greatest number of votes for President, shall be the President, if such number be a majority of the whole number of electors appointed;

The only reference to Congress is that the "opening" of "certificates" received from the individual states shall be done "in the presence of" Congress. The members of Congress are witnesses, not participants, of the procedure set forth in the Twelfth Amendment.  If a person receives a majority of the whole of all votes cast by Electors that person is President.

A contrary process that might be imagined – and not in compliance with the Twelfth Amendment – could involve the certificates being opened and votes counted in the White House or Naval Observatory, beyond the ability of the States' federal elected representatives to observe. The Electoral Votes are, after all, the votes of Electors from each of those States, giving the elected representatives an interest in being able to observe the votes as they were being counted.


Another contrary practice that might be imagined – and also not in compliance with the Twelfth Amendment – could involve members of Congress "objecting" to certificates, and then voting amongst themselves to not allow some Electoral votes to be included in the final count.

Such process would find as much support in the Twelfth Amendment as would the process of having the certificates opened and counted in the White House or Naval Observatory – meaning none at all.

Yet it is just this "solemn" and "formal" – and unconstitutional – process which the government relies upon to claim that the meeting of Congress on January 6 was an "official proceeding".

This process for counting the votes of the Electoral College was adopted by constitutional amendment pursuant to Article V of the Constitution, with the Twelfth Amendment being ratified by the required number of States in 1804.

The Twelfth Amendment has never been Amended by the same process under Article V.

In 3 U.S.C. § 15 Congress created statutory processes and procedures that are contrary to and in conflict with the Twelfth Amendment.  Congress gave unto itself a procedure for the counting of Electoral votes which includes the authority to invalidate those votes and engage in a process for selecting the President and Vice-President not in accord with the provisions of the Twelfth Amendment.

The express provisions of that statute which conflict reads as follows:

> authority on any member of Congress to take an official action with regard to the counting of votes, the statute is facially unconstitutional as being an arrogation by Congress of authority contrary to the express provisions of the Twelfth Amendment.  The entire contemplated process by which members of Congress have conferred upon themselves by statute the right to "object" and debate the counting of Electoral Votes certified and delivered by sovereign State Governments is extra-constitutional and quasi-parliamentary.  It reflects operational amendment to the procedure

5

established by the Twelfth Amendment, one which has never undergone the process for amending the Constitution as set forth in the Constitution.

We must acknowledge that, on its face, the word "corruptly" is vague; that is, in the absence of some narrowing gloss, people must "guess at its meaning and differ as to its application." Poindexter

Date: October 16, 2021					Respectfully Submitted,

							*John M. Pierce*
							_____
							John M. Pierce
							355 S. Grand Avenue, 44th Floor
							Los Angeles, CA 90071
							Tel: (213) 400-0725
							Email: jpierce@piercebainbridge.com

							*Attorney for Defendant Nathaniel DeGrave*

1

## **CERTIFICATE OF SERVICE**

I, John M. Pierce, hereby certify that on this day, October 4, 2021, I caused a copy of the foregoing document to be served on all counsel through the Court's CM/ECF case filing system.

       /s/ John M. Pierce
John M. Pierce