UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>     v.<br><br>RONALD SANDLIN, *also known as*<br>RONALD L. SANDLIN, and NATHANIEL<br>DEGRAVE,<br><br>      *Defendants.* | No. 21-cr-88 (DLF) |

## MEMORANDUM OPINION

The indictment in this case charges defendants Ronald Sandlin and Nathaniel DeGrave with obstructing an official proceeding of Congress on January 6, 2021, in violation of 18 U.S.C. § 1512(c)(2).  Before the Court is defendant Sandlin's motion to dismiss count two of the superseding indictment, Dkt. 45.[1]  For the reasons that follow, the Court will deny the motion.

## I.    BACKGROUND[2]

On January 6, 2021, at approximately 1:00 p.m., a joint session of Congress convened at the U.S. Capitol to certify the Electoral College results of the 2020 Presidential Election. Superseding Indictment ¶¶ 4, 7, Dkt. 46. That day, the Capitol building and its exterior plaza were closed to members of the public.  *Id.* ¶ 6.  As the Joint Session commenced, a large crowd gathered outside, and U.S. Capitol police attempted to keep the crowd away from the building.

---

[1] Since Sandlin filed this motion, a grand jury returned a Superseding Indictment against both defendants, which converted Count Five of the original indictment against Sandlin, *see* Indictment, No. 21-cr-88, Dkt. 6, and Count Three of the original indictment against DeGrave, *see* Indictment, No. 21-cr-90, Dkt. 4, into Count Two of the Superseding Indictment, *see* Superseding Indictment, Dkt. 46.  DeGrave joined Sandlin's motion to dismiss.  *See* DeGrave's Reply, Dkt. 55.

[2] The Court treats the allegations in the indictment as true for purposes of this motion.  *See* *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009).

*Id.* ¶ 8.  Individuals in the crowd forced their way over police barricades and into the Capitol by breaking windows, ramming doors, and assaulting Capitol police officers.  *Id*.  Other members of the crowd encouraged those actions.  *Id.*  At approximately 2:20 p.m., members of Congress and Vice President Pence were evacuated from their respective chambers.  *Id.* ¶ 9.  The Joint Session was suspended until shortly after 8:00 p.m.  *Id.* ¶ 10.

Before this attack at the U.S. Capitol, Ronald Sandlin and Nathaniel DeGrave made plans to travel to Washington, D.C. together to "stop the steal."  *Id.* ¶ 15.  Sandlin asked DeGrave if he was "down for danger," and DeGrave replied that he was "bringing bullet proof clothing."  *Id.* ¶ 16.  They drove to the D.C. area on January 5, bringing with them "paramilitary gear, one Glock .43 pistol, an M&P bodyguard pocket pistol, two magazines of ammunition, knives, a handheld taser/stun gun, an expendable baton, walkie talkies, and bear mace."  *Id.* ¶ 22.

On January 6, shortly before the Capitol attack, the defendants recorded a livestream video in which Sandlin said that "freedom is paid for with blood" and "there is going to be violence."  *Id.* ¶ 24.  He "urge[d] other patriots" to "take the Capitol."  *Id.*  He also said that "we are going to be there back by one o'clock when it is action time[;] it is game time."  *Id.* ¶ 25.  As Sandlin and DeGrave approached the Capitol, wearing protective gear and carrying two knives, they recorded another video discussing and encouraging the breach of the Capitol building.  *Id.* ¶¶ 26–27.

Just after 2:00 p.m., the defendants "forcibly stormed past exterior barricades and law enforcement officers, and ignored building alarms, to breach the Capitol."  *Id.* ¶ 28.  They pushed several Capitol police officers guarding an exterior door to the Capitol rotunda, thus allowing the mob outside to breach the building.  *Id.* ¶ 29.  Sandlin attempted to rip the helmet off one of the officers.  *Id.*  They made their way to the Senate Gallery, where they wrestled

officers in order to get inside; Sandlin struck one of the officers in the back of his head.  *Id.* ¶ 30. In the Senate Chamber, DeGrave shouted at the rioters to "take laptops, paperwork, take everything."  *Id.* ¶ 31

Sandlin and DeGrave were separately indicted on February 5, 2021.  Indictment, No. 21-cr-88, Dkt. 6; No. 21-cr-90, Dkt. 4.  On September 15, 2021, the grand jury returned a Superseding Indictment against both defendants on twelve counts.  Superseding Indictment, Dkt. 46.  Count Two charges the defendants with violating 18 U.S.C. § 1512(c)(2), which criminalizes "corruptly . . . obstruct[ing], influenc[ing], or imped[ing] any official proceeding, or attempt[ing] to do so"  in violation of 18 U.S.C. § 1512(c)(2).  Superseding Indictment ¶ 37.  The Count also charges them with aiding and abetting that obstruction, in violation of 18 U.S.C. § 2. *Id.*

On September 13, 2021, Sandlin moved to dismiss this count.  Sandlin's Mot. to Dismiss. On September 15, DeGrave was added as a defendant.  And on October 15, he joined Sandlin's motion and filed a reply in support.  DeGrave's Reply at 9.  The Court heard argument on December 3.  The motion is now ripe for resolution.

## II.    LEGAL STANDARDS

Under Rule 7(c)(1), the indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged."  Fed. R. Crim. P. 7(c)(1). "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense."  *Hamling v. United States*, 418 U.S. 87, 117 (1974).  A defendant may move to dismiss an indictment or count before trial.  Fed. R. Crim. P. 12(b)(3)(B).  When considering a motion to dismiss, the

court "is limited to reviewing the face of the indictment," *United States v. Sunia*, 643 F. Supp. 2d 51, 60 (D.D.C. 2009), and it assumes the truth of the indictment's factual allegations, *United States v. Bowdoin*, 770 F. Supp. 2d 142, 145 (D.D.C. 2011).  The question for the court is "whether the allegations, if proven, would be sufficient to permit a jury to find that the crimes charged were committed."  *Id.* at 146.

## III.    ANALYSIS

Count Two of the Superseding Indictment charges Sandlin and DeGrave with obstruction of an official proceeding and aiding and abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2. Specifically, it states that the defendants "did, corruptly obstruct, influence, and impede, and did, corruptly, attempt to obstruct, influence, and impede an official proceeding, that is a proceeding before Congress, by entering and remaining in the United States Capitol without authority and committing an act of civil disorder, and engaging in disorderly and disruptive conduct." Superseding Indictment ¶ 37.  Both defendants move to dismiss Count Two on multiple grounds. They argue that it fails to state an offense, as Congress's certification of the electoral results did not constitute an "official proceeding" and that their alleged conduct did not "obstruct, influence, and impede" the proceeding within the meaning of the statute.  Sandlin's Mot. to Dismiss at 2. DeGrave also contends that the term "corruptly" is unconstitutionally vague.  *See* DeGrave's Reply at 7.  The Court takes each argument in turn.

### A.     Failure to State an Offense Under § 1512(c)(2)

In 2002, following the collapse of Enron, Congress enacted a new obstruction provision in Section 1102 of the Sarbanes-Oxley Act of 2002, Pub. L. No. 107-204, 116 Stat. 745, 807: "Tampering with a record or otherwise impeding an official proceeding."  It was codified as subsection (c) of a pre-existing statute, 18 U.S.C. § 1512.  Section 1512(c), in full, states:

Whoever corruptly—

(1) alters, destroys, mutilates, or conceals a record, document, or other object, or attempts to do so, with the intent to impair the object's integrity or availability for use in an official proceeding; or

(2) otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so,

shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 1512(c)(2).

In their motion, the defendants argue that Count Two fails to state an offense because they understand § 1512(c)(2) to be limited to proceedings that consider and actions related to evidence.  In the defendants' view, Congress did not "have the ability to make decisions based on witness testimony or evidence" during this Joint Session.  Sandlin's Mot. to Dismiss at 26. They further argue that the government has not alleged that they did anything to affect "the state and content" of anything Congress might have considered at the Joint Session.  *Id.* at 12.  The Court disagrees that § 1512(c)(2) should be construed so narrowly.

       *1.*    *The Congressional certification is an "official proceeding"*

To determine the meaning of "official proceeding," the Court starts, as it must, with the text.  *See Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997).  Section 1515(a)(1) defines "official proceeding," for purposes of § 1512(c), as:

(A) a proceeding before a judge or court of the United States, a United States magistrate judge, a bankruptcy judge, a judge of the United States Tax Court, a special trial judge of the Tax Court, a judge of the United States Court of Federal Claims, or a Federal grand jury;

(B) *a proceeding before the Congress*;

(C) a proceeding before a Federal Government agency which is authorized by law; or

(D) a proceeding involving the business of insurance whose activities affect interstate commerce before any insurance regulatory official or agency or any agent or examiner

appointed by such official or agency to examine the affairs of any person engaged in the business of insurance whose activities affect interstate commerce;

18 U.S.C. § 1515(a)(1) (emphasis added).

Thus defined, the meaning of "'official proceeding' depends heavily on the meaning of the word 'proceeding.'" *United States v. Ermoian*, 752 F.3d 1165, 1169 (9th Cir. 2013). The word can be defined broadly, in a "lay" sense, as "[t]he carrying on of an action or series of actions." *Proceeding*, def. 2a, Oxford English Dictionary (3d ed. 2007); *Ermoian*, 752 F.3d at 1169. Or it can be understood narrowly, in a "legal" sense, as "[t]he business conducted by a court or other official body; a hearing." *Proceeding*, def. 4, Black's Law Dictionary (11th ed. 2019).

Although no court has interpreted the phrase "proceeding before the Congress," as it appears in § 1515(a)(1)(B), numerous courts have interpreted the phrase "proceeding before a Federal Government agency which is authorized by law," as it appears in § 1515(a)(1)(C). Those courts, considering various statutory clues, have consistently held that "proceeding" should be defined narrowly. That the proceeding occurs "before" an agency implies "some formal convocation of the agency in which parties are directed to appear, instead of any informal investigation conducted by any member of the agency." *United States v. Ramos*, 537 F.3d 439, 462–63 (5th Cir. 2008). And that "proceeding" is modified by "official"—meaning "formal" and "ceremonious," *Official*, def. 5, Oxford English Dictionary (3d ed. 2004)—"indicates a sense of formality that is normally associated with legal proceedings, but not necessarily with a mere 'action or series of actions.'" *Ermoian*, 752 F.3d at 1170. As such, neither FBI investigations, *see Ermoian*, 752 F.3d at 1172; *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019), nor internal agency investigations, *see Ramos*, 537 F.3d at 463, qualify as "official proceedings." They are not formal hearings conducted before official bodies. The Court agrees with this

6

reasoning.  An "official proceeding" under § 1512(c)(2) does not include any and all series of actions before Congress; rather, the proceeding must be akin to a formal hearing.

Congress's Joint Session to certify the electoral results is such a formal hearing.  The Constitution requires the Vice President, acting as President of the Senate, to "open all the certificates" of the electoral results "in the presence of the Senate and House of Representatives." U.S. Const., art. II, § 1, cl. 3; *id.* amend. XII.  The "votes shall then be counted."  *Id.*  The Electoral Count Act, Pub. L. No. 45-90, 24 Stat. 373 (1887), specifies the procedures to be followed.  A Joint Session of the Senate and the House of Representatives must meet "at the hour of 1 o'clock in the afternoon" on "the sixth day of January succeeding every meeting of the electors."  3 U.S.C. § 15.  The presiding officer (the President of the Senate) opens the certificates of the electoral votes and hands them to tellers appointed by each House, who make a list of the votes.  *Id.*  When announcing each certificate, the presiding officer calls for objections, if any, which must be made in writing and signed by both one Senator and one Member of the House of Representatives.  *Id.*  Thereafter, the Senate and the House withdraw to consider each objection, and "each Senator and Representative may speak to such objection or question five minutes, and not more than once."  *Id.* § 17.  The presiding officer must cut the debate off after two hours.  *Id.*  He also has the "power to preserve order" during the session.  *Id.* § 18.  The Act details where the presiding officer, the Speaker, the Senators, the Representatives, the tellers, and others are to sit in the chamber.  *Id.* § 16.  And it commands that the session "not be dissolved until the count of electoral votes shall be completed and the result declared."  *Id.*

The Joint Session thus has the trappings of a formal hearing before an official body. There is a presiding officer, a process by which objections can be heard, debated, and ruled upon, and a decision—the certification of the results—that must be reached before the session can be

adjourned.  Indeed, the certificates of electoral results are akin to records or documents that are produced during judicial proceedings, and any objections to these certificates can be analogized to evidentiary objections.  Accordingly, the congressional certification at issue here is a "proceeding before the Congress."[3]

The defendants resist this conclusion by arguing that the "official proceeding" must relate to the "administration of justice," and that it must have the ability to secure witness testimony and evidence.  Sandlin's Mot. to Dismiss at 19, 23.  They further argue that the Joint Session did not meet these requirements because Congress did not secure documents and witnesses during it.  *Id.* at 25–26.  But these extra requirements for an "official proceeding" are absent from § 1515(a)(1)(B), and "we ordinarily resist reading words or elements into a statute that do not appear on its face."  *Bates v. United States*, 522 U.S. 23, 29 (1997).  Moreover, a related provision in the same chapter of Title 18 makes clear that congressional proceedings under §1512(c) need not be "court-like." Sandlin's Mot. to Dismiss at 19.  Under 18 U.S.C. § 1503, it is unlawful to "*corruptly* or by threats or force, or by any threatening letter or communication, *influence[], obstruct[], or impede[]*, or endeavor[] to influence, obstruct, or impede, *the due administration of justice*." (emphasis added).  This provision includes the same mens rea term ("corruptly") and verbs (influence, obstruct, impede) as does § 1512(c)(2).  Yet § 1503 targets "the due administration of justice," whereas § 1512(c)(2) targets official proceedings more broadly.  Considering that difference in subject matter, the Court will not read an "administration

---

[3] In his reply, DeGrave argues that the Electoral Count Act conflicts with the Twelfth Amendment and is thus unconstitutional.  *See* DeGrave's Reply at 4–7.  Because the allegedly unconstitutional Act creates the Joint Session at issue, he argues that it was not a "legitimate 'official proceeding.'"  *Id.* at 7.  The Court disagrees.  Whether the Act is constitutional has no bearing on whether the congressional certification qualifies as an "official proceeding" within the plain meaning of § 1515(a)'s definition.

of justice" requirement into "official proceeding."  *See Russello v. United States*, 464 U.S. 16, 23 (1983).  The defendants' additional argument that Congress's certification duties were "purely ceremonial or ministerial" and did not play a role in any decision-making process, *see* Sandlin's Mot. to Dismiss at 25, is unpersuasive: an "official proceeding" need not be adjudicative.

For the reasons above, Congress's Joint Session to certify the electoral results on January 6 constituted an "official proceeding" under § 1512(c)(2).

### 2.    *Section 1512(c)(2) is not limited to acts affecting evidence*

The indictment alleges that the defendants violated § 1512(c)(2) by stopping, or attempting to stop, the proceeding from going forward by engaging in disruptive conduct, including by assaulting law enforcement in the Capitol.  *See generally* Superseding Indictment. This alleged conduct constitutes "obstruction" within the meaning of § 1512(c)(2).

Because the statute does not define "obstruct," "influence," or "impede," the Court begins with their ordinary meanings.  *See Schindler Elevator Corp. v. United States ex rel. Kirk*, 563 U.S. 401, 407 (2011).  To "obstruct" is "[t]o prevent" or to "hinder" something's "passage" or "progress."  *Obstruct*, def. 2a, *Oxford English Dictionary* (3d ed. 2004).  Similarly, to "impede" is to "hinder" or to "retard in progress or action by putting obstacles in the way." *Impede*, def. a, *Oxford English Dictionary* (2d ed. 1989).  *See also Marinello v. United States*, 138 S. Ct. 1101, 1106 (2018) (citing similar definitions and referring to these terms as "broad"). And to "influence" is "[t]o affect the condition of" or "to have an effect on" something. *Influence*, def. 1(b), Oxford English Dictionary (2d ed. 1989).  These terms are expansive and seemingly encompass all sorts of actions that affect or interfere with official proceedings, including blocking or altering the evidence that may be considered during an official proceeding *or*, as the defendants attempted, halting the occurrence of the proceeding altogether.

In addition to the plain text, the Court must also consider "the specific context in which [the terms are] used, and the broader context of the statute as a whole." *Robinson*, 519 U.S. at 341. Subsection (c)(2) directly follows (c)(1), which targets document and object spoliation. 18 U.S.C. § 1512(c). Surrounding subsections of § 1512 also focus on documentary, tangible, and testimonial evidence. *See generally id.* § 1512. Relying on this broader context, the defendants contend that subsection (c)(1) limits the scope of subsection (c)(2), Sandlin's Mot. to Dismiss at 3, but the Court disagrees. The contextual evidence does not alter or overcome the plain meaning of Congress's chosen words.

Subsections (c)(1) and (c)(2) are linked by the word "otherwise." A defendant can violate § 1512(c) either by (1) altering, destroying, or concealing documents and other objects, or (2) by "otherwise"—that is "in a different manner" or "by other means," *Otherwise*, def. B(1)(a), Oxford English Dictionary (3d ed. 2004), obstructing, influencing, or impeding the proceeding. 18 U.S.C. § 1512(c)(1), (c)(2). In this way, "[s]ection 1512(c)(2) gives defendants fair warning in plain language that a crime will occur in a *different* ("otherwise") manner compared to § 1512(c)(1) if the defendant 'obstructs, influences, or impedes any official proceeding' without regard to whether the action relates to documents or records." *United States v. Petruk*, 781 F.3d 438, 446–47 (8th Cir. 2015) (emphasis added). Thus, the interplay between § 1512(c)(1) and § 1512(c)(2) clarifies that the latter prohibits obstruction by means *other than* document destruction.

The Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008), does not alter this conclusion. There, the Court interpreted the residual clause in the Armed Career Criminal Act, which covers "any crime . . . that . . . is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical*

*injury to another*."  18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added).  It held that a covered crime

must be "similar" in kind to the listed crimes; the "otherwise involves" clause did not include

"every crime" that presented a serious risk of injury.  *Begay*, 574 U.S. at 142 (emphasis omitted).

*Begay* rested in part of the statutory history of the ACCA, which has no application here.  *See id.*

at 143–44.

　　　More importantly, the residual clause at issue in *Begay* is a clause in the same provision,

not a separate subsection.  There, the "otherwise" clause forms part of the ACCA's definition of

a "violent felony" and is separated from the listed examples only by a comma.  By contrast,

subsection (c)(2) is a "plainly separate and independent" offense from subsection (c)(1) and is set

off by both a semicolon and a line break.  *United States v. Ring*, 628 F. Supp. 2d 195, 224 n.17

(D.D.C. 2009) (rejecting the comparison of "otherwise" in § 1512(c)(2) with "otherwise" as

interpreted in *Begay*); *United States v. De Bruhl-Daniels*, 491 F. Supp. 3d 237, 251 (S.D. Tex.

2020) (describing subsection (c)(2) as "a wholly separate and much broader prohibition").  In

similar circumstances, the Supreme Court interpreted two clauses in the bank fraud statute to

have "separate meanings" because they "have separate numbers, line breaks before, between,

and after them, and equivalent indentation . . . placing the clauses visually on an equal footing."

*Loughrin v. United States*, 573 U.S. 351, 359 (2014).  Section 1512(c)'s structure thus does not

support narrowly construing subsection (c)(2)'s otherwise expansive plain text.

　　　*Yates v. United States*, 574 U.S. 528 (2015), is inapposite for the same reasons.  There,

the Supreme Court applied the *ejusdem generus* and *noscitur a sociis* canons to interpret the term

"tangible object" in 18 U.S.C. § 1519, which provides that "[w]hoever knowingly alters,

destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document,

or tangible object . . ." shall be punished.[4]  The Court construed "tangible object" to include only

one "used to record or preserve information," similar to a "record" or a "document."  *Id.* at 532.

Thus, a fish did not qualify as a tangible object.  *Id.*

Like the "otherwise involves" clause in *Begay*, the "tangible object" phrase in *Yates*

appears in the same list—in the same sentence—as the other words that the Court used to give

the term its meaning.  *See* 18 U.S.C. § 1519.  As explained above, the structure of § 1512(c) is

different.  The verbs in (c)(2) do not appear in a list with those in (c)(1); rather, they are distinct

offenses.  Thus, "these canons are irrelevant" in this context.  *Overdevest Nurseries, L.P. v.

Walsh*, 2 F.4th 977, 983 (D.C. Cir. 2021) (rejecting the use of the canons where the general term

does not immediately follow and is not in the same provision as the specific terms).

Indeed, § 1512(c)(2) is more akin to the omnibus clause in 18 U.S.C. § 1503[5] than it is to

"tangible object" in § 1519.  The specific provisions in § 1503 cover actions related to jurors and

court officers and the omnibus clause "serves as a catchall, prohibiting persons from endeavoring

---

[4] Where a general term follows a list of specific items, the *ejusdem generus* rule construes the general term to include items similar in nature to the enumerated ones.  *Washington State Dep't of Social and Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384 (2003).  Under the *noscitur a sociis* canon, words grouped in a list are given similar meanings.  *See Yates v. United States*, 574 U.S. 528, 544 (2015).

[5] 18 U.S.C. § 1503(a) provides: "Whoever corruptly, or by threats or force, or by any threatening letter or communication, endeavors to influence, intimidate, or impede any grand or petit juror, or officer in or of any court of the United States, or officer who may be serving at any examination or other proceeding before any United States magistrate judge or other committing magistrate, in the discharge of his duty, or injures any such grand or petit juror in his person or property on account of any verdict or indictment assented to by him, or on account of his being or having been such juror, or injures any such officer, magistrate judge, or other committing magistrate in his person or property on account of the performance of his official duties, *or corruptly or by threats or force, or by any threatening letter or communication, influences, obstructs, or impedes, or endeavors to influence, obstruct, or impede, the due administration of justice*, shall be punished as provided in subsection (b)."  18 U.S.C. § 1503(a) (omnibus clause emphasized).

to influence, obstruct, or impede the due administration of justice."  As such, it is "far more

general in scope."  *United States v. Aguilar*, 515 U.S. 593, 598 (1995).  The *ejusdem generus*

canon does not apply to limit § 1503's omnibus clause to acts directed at jurors and court

officers, because the clause "is not a general or collective term following a list of specific items."

*Aguilar*, 515 U.S. at 615 (Scalia, J., concurring in part and dissenting in part) (emphasis omitted).

Instead, "it is one of the several distinct and independent prohibitions contained in § 1503 that

share only the word 'Whoever,' which begins the statute, and the penalty provision that ends it."

*Id.*  So too here.  Subsections (c)(1) and (2) share only one more word in common: the mens rea

term, corruptly.  Otherwise, they are "distinct and independent prohibitions" that need not be

interpreted in the same way.  *See United States v. Howard*, 569 F.2d 1331, 1334 (5th Cir. 1978)

("[T]he specific wording of section 1503 was intended to forbid certain means of obstructing

justice, while the omnibus clause aims at obstruction of justice itself, regardless of the means

used to reach that result.").

Further, the other contextual clues that led the *Yates* Court to adopt its narrowing

construction are absent here.  In *Yates*, the Court was troubled by the fact that some of the

provision's verbs—like "falsifies" and "makes a false entry in"—would not make sense as

applied to a fish.  *Yates*, 574 U.S. at 544; *id.* at 551 (Alito, J., concurring in the judgment).  That

is not a problem here, where obstructing, influencing, or impeding an official proceeding

naturally come in numerous forms, including both evidence impairment and the halting of the

proceeding altogether.  Moreover, § 1519's title, in both the U.S. Code and the specific section

of the Sarbanes-Oxley Act, refers only to "records" and "documents," not to physical evidence

writ large.  *Id.* at 539–40.  Section 1512(c) was added in the Sarbanes-Oxley Act, and the title of

the relevant section in the Act is "Tampering with a record or *otherwise impeding an official*

*proceeding.*" § 1102, 116 Stat. at 807 (emphasis added).  True, § 1512's title in the U.S. Code, "Tampering with a witness, victim or an informant," does not refer to obstructive acts generally. But unlike § 1519, which Sarbanes-Oxley inserted as an entirely new statutory provision, § 1512(c) was placed in a preexisting provision, and § 1512's title was not altered to reflect the new subsection's focus.[6]  The titles therefore offer no gloss on subsection (c)(2)'s plain meaning.

Nor does the plain text of § 1512(c)(2) create "intolerable" surplusage.  *Aguilar*, 515 U.S. at 616 (Scalia, J., concurring in part and dissenting in part).  To be sure, interpreting subsection (c)(2) to include any and all obstructive, impeding, or influencing acts creates substantial overlap with the rest of § 1512, and with other provisions in Chapter 73.  But the Court does not find that it creates *intolerable* overlap.

To start, a broad interpretation of § 1512(c)(2) does not entirely subsume numerous provisions with the chapter.  For instance, § 1512(a)(1)(C), (a)(2)(C), (b)(3), and (d)(2)–(4) proscribe conduct unrelated to an "official proceeding."  Sections 1503 and 1505 prohibit obstructive acts related to the "due administration of justice" and congressional inquiries or investigations, respectively, which may have no relation to an official proceeding.  Section 1513, meanwhile, prohibits retaliatory conduct that occurs after a person participates in an official proceeding.  Section 1512(c)(2), on the other hand, concerns obstructive conduct that occurs either before or during such proceedings.

It is true that killing a witness to prevent his testimony at an official proceeding, *see* § 1512(a)(1)(A), or intimidating a person so that he withholds a record from the proceeding, *see* § 1512(b)(2)(A), among others, could be charged under § 1512(c)(2).  But the fact that there is overlap between § 1512(c)(2) and the rest of § 1512, or other provisions in Chapter 73, is hardly

---

[6] Indeed, the title does not reflect subsection (c)(1)'s focus on physical evidence either.

remarkable; "[i]t is not unusual for a particular act to violate more than one criminal statute, and in such situations the Government may proceed under any statute that applies." *Aguilar*, 515 U.S. at 616 (Scalia, J., concurring in part and dissenting in part) (internal citations omitted); *see also Loughrin*, 573 U.S. at 358 n.4.

More importantly, the defendants' narrow construction of subsection (c)(2), which would limit its scope to acts affecting evidence, would also overlap with the rest of § 1512, whose provisions mainly relate to documentary and testimonial evidence.  And while the defendants claim that Congress would not have enacted the specific subsection (c)(1) if subsection (c)(2) covered *all* obstructive acts, the same could be said for their interpretation of the catchall provision.  After all, committing an act that affects evidence in a proceeding fully encompasses "alter[ing], destroy[ing], mutilat[ing], or conceal[ing] a record, document, or other object" for its use in a proceeding.  "'[T]he canon against surplusage merely favors that interpretation which *avoids* surplusage,' not the construction substituting one instance of superfluous language for another." *United States v. Ali*, 718 F.3d 929, 938 (D.C. Cir. 2013) (quoting *Freeman v. Quicken Loans, Inc.,* 566 U.S. 624, 635 (2012)).

The majority of courts that have considered the interplay between the subsections agree that subsection (c)(2)'s scope is not limited by subsection (c)(1).  *See United States v. Volpendesto*, 746 F.3d 273, 286 (7th Cir. 2014) (explaining that subsection (c)(2) "'operates as a catch-all to cover "otherwise" obstructive behavior' that might not constitute a more specific offense like document destruction, which is listed in (c)(1)" (quoting *United States v. Burge*, 711 F.3d 803, 809 (7th Cir. 2013)); *Petruk*, 781 F.3d at 446–47 (same); *see also Ring,* 628 F. Supp. 2d at 224–25 (same); *De Bruhl-Daniels*, 491 F. Supp. 3d at 250–52 (same); *United States v. Ying Lin*, 270 F. Supp. 3d 631, 636 (E.D.N.Y. 2017) (same); *United States v. Kumar*, No. 04-CR-

846(S–2), 2006 WL 6589865, at *2 (E.D.N.Y. Feb. 21, 2006) (same).  *But see United States v. Singleton*, No. H-06-080, 2006 WL 1984467, at *3 (S.D. Tex. July 14, 2006) (requiring the obstructive acts to have "some nexus to tangible evidence"); *United States v. Hutcherson*, No. 605-CR-00039, 2006 WL 270019, at *2 (W.D. Va. Feb. 3, 2006) ("If an individual corruptly obstructs an official proceeding[] through his conduct in relation to a tangible object, such person violates this subsection.").

Finally, at least one court of appeals has affirmed a § 1512(c)(2) conviction where the defendant's obstructive conduct did not relate to evidence.  In *United States v. Reich*, 479 F.3d 179 (2d Cir. 2007) (Sotomayor, J.), a defendant was convicted of corruptly obstructing or influencing a judicial proceeding by "render[ing] moot" a portion of it.  *Id.* at 186.  By forging an order from the judge, the defendant tricked the opposing party into withdrawing a mandamus petition.  *Id.*  The obstructive conduct in that case was not aimed at *evidence* in a proceeding, but rather was intended to *halt* part of a proceeding.  This is the sort of "otherwise obstructive" act, *see Volpendesto*, 746 F.3d at 286, not "specifically contemplated" by subsection (c)(1), but nevertheless captured by the "generally phrased" catchall provision of subsection (c)(2), *see Republic of Iraq v. Beaty*, 556 U.S. 848, 860 (2009).

Based on the plain text, the broader context, and the weight of authority, the Court concludes that § 1512(c)(2) covers a broader set of obstructive acts than the defendants contend.

### 3.    *The defendants' other arguments do not persuade*

*First*, the defendants invoke legislative history to prove that 18 U.S.C. § 1512(c)(2) does not cover all obstructive acts.  Courts are instructed not to "invoke the statute's supposed purpose or legislative history to create ambiguity where none exists."  *United States v. Griffin*, No. 21-cr-00092, 2021 WL 2778557, at *4 (D.D.C. July 2, 2021) (citing *Milner v. Dep't of Navy*, 562 U.S.

562, 574 (2011)); *see Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994).  But even if the

Court were to consider it, it would not help their case.

As noted, Congress enacted § 1512(c) as part of the Sarbanes-Oxley Act of 2002

following "Enron's massive accounting fraud and revelations that the company's outside auditor,

Arthur Andersen LLP, had systematically destroyed potentially incriminating documents."

*Yates*, 574 U.S. at 535–36.  That Congress acted due to concerns about document destruction and

the integrity of investigations of corporate criminality does not define the statute's scope.

Statutes often reach beyond the principal evil that animated them.  *See Oncale v. Sundowner*

*Offshore Servs., Inc.*, 523 U.S. 75, 79 (1998).

*Second*, the defendants argue that adopting the government's broad interpretation would

render § 1512(c)(2) susceptible to arbitrary enforcement, and thus unconstitutionally vague.

Sandlin's Mot. to Dismiss at 12–15.  Section 1512(c)(2)'s verbs plainly cover obstructive acts

aimed at official proceedings.  For vagueness, the "touchstone is whether the statute, *either*

*standing alone* or as construed, made it reasonably clear at the relevant time that the defendant's

conduct was criminal."  *United States v. Lanier*, 520 U.S. 259, 267 (1997) (emphasis added).

And there is little question that violent assaults on law enforcement officers of the nature charged

here constitute obstructive acts.  The defendants were thus on notice of the illegality of their

alleged conduct.

Moreover, on the issue of arbitrary enforcement, "[f]ew subjects are less adapted to

judicial review than the exercise by the Executive of his discretion in deciding when and whether

to institute criminal proceedings, or what precise charge shall be made, or whether to dismiss a

proceeding once brought."  *United States v. Fokker Servs. B.V.*, 818 F.3d 733, 741 (D.C. Cir.

2016) (internal quotation marks omitted) (alteration in original).  Even if other similarly-situated

defendants have not been charged with this offense, that is not enough to constitute the "clear evidence" needed for the Court to question whether "prosecutors have properly discharged their official duties." *Griffin*, 2021 WL 2778557, at *6 (quoting *Fokker Servs. B.V.*, 818 F.3d at 741). "Disparate charging decisions in different circumstances may be relevant at sentencing," but they are not an appropriate consideration at this stage. *Id.* at *7. The defendants' challenge to the enforcement of § 1512(c)(2) thus fails.

*Finally*, the rule of lenity does not apply. Lenity only comes into play when the court has exhausted all tools of statutory construction and is still left with "grievous ambiguity." *Barber v. Thomas*, 560 U.S. 474, 488 (2010). For the reasons stated, the Court concludes that § 1512(c)(2), along with the definition of "official proceeding" in § 1515(a), are unambiguous.

Accordingly, the Court will deny the defendants' motion to dismiss on the basis that Count Two fails to state an offense.

### B.    Vagueness

Finally, DeGrave argues that Count Two must be dismissed because the word "corruptly" renders § 1512(c)(2)[7] unconstitutionally vague. DeGrave's Reply at 7–8.[8] A law is vague when "it fails to give ordinary people fair notice of the conduct it punishes, or [is] so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). "[T]he touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." *Lanier*, 520 U.S. at 267. This is

---

[7] Recall that 18 U.S.C. § 1512(c)(2) states that "whoever corruptly . . . otherwise obstructs, influences, or impedes any official proceeding, or attempts to do so, shall be fined under this title or imprisoned not more than 20 years, or both." 18 U.S.C. § 1512(c)(2).

[8] Sandlin has not joined DeGrave's reply and has not made this argument in his own briefing. Nevertheless, the Court's conclusion regarding the statute's application to DeGrave applies equally to Sandlin.

a "stringent standard," as "a void-for-vagueness challenge is unavailing when posed to a statute that merely 'requires a person to conform his conduct to an imprecise but comprehensible normative standard, whose satisfaction may vary depending upon whom you ask.'" *United States v. Harmon*, No. 19-cr-395, 2021 WL 1518344, at *4 (D.D.C. Apr. 16, 2021) (quoting *United States v. Bronstein*, 849 F.3d 1101, 1107 (D.C. Cir. 2017)).  Rather, the statute must "specif[y] no standard of conduct . . . at all." *Bronstein*, 849 F.3d at 1107 (internal quotation marks omitted) (quoting *Coates v. City of Cincinnati*, 402 U.S. 611, 614 (1971)).  "[C]larity at the requisite level may be supplied by judicial gloss on an otherwise uncertain statute." *Lanier*, 520 U.S. at 266.

Further, a criminal statute is not unconstitutionally vague on its face unless it is "impermissibly vague in all of its applications." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates*, 455 U.S. 489, 497 (1982).  And "[o]ne to whose conduct a statute clearly applies may not successfully challenge it for vagueness." *Parker v. Levy*, 417 U.S. 733, 756 (1974).  Accordingly, to the extent that DeGrave mounts a facial challenge to § 1512(c)(2), *see* DeGrave's Reply at 7–8, it fails because the statute specifies "core" behavior to which it constitutionally applies, though there may be scenarios at the edges that present vagueness problems.  *See United States v. Poindexter*, 951 F.2d 369, 385 (D.C. Cir. 1991).  And because the facts alleged in the indictment are plainly covered by the statute, DeGrave's as-applied challenge fails as well.

DeGrave's claim derives from the *Poindexter* decision, in which the court found that "corruptly," undefined in 18 U.S.C. § 1505,[9] was unconstitutionally vague as applied to the

---

[9] 18 U.S.C. § 1505 states, in relevant part: "Whoever *corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence,*

defendant's conduct of lying to Congress.  951 F.2d at 386.  First, the court read "corruptly" in § 1505 in its transitive sense, meaning that it referred to the defendant's "corrupting" of another person, rather than his own behavior.  *Id.* at 379.  Second, it looked to the word's dictionary definitions and found that they did not cure the court's vagueness concerns, as "words like depraved, evil, immoral, wicked, and improper are no more specific . . . than corrupt."  *Id.* at 378–79.  But even then, the court did "not conclude that . . . the term" was "unconstitutionally vague as applied to all conduct."  *Id.* at 385.  Instead, it identified "core behavior to which [the statute] may constitutionally be applied": where the defendant, for the purpose of obstructing or influencing a congressional inquiry, influences another person to "violate a legal duty."  *Id.*

Courts have since cabined *Poindexter*'s holding to its facts and have not read it "as a broad indictment of the use of the word 'corruptly' in the various obstruction-of-justice statutes." *United States v. Shotts*, 145 F.3d 1289, 1300 (11th Cir. 1998) (construing 18 U.S.C. § 1512(b)(1)'s "corruptly persuades" language);[10] *see also United States v. Edwards*, 869 F.3d 490, 501–02 (7th Cir. 2017) (same for § 1512(b)(3)).  For instance, in *United States v. Morrison*, 98 F.3d 619 (D.C. Cir. 1996), the D.C. Circuit affirmed a conviction under § 1512(b) in the face of a *Poindexter*-based challenge, noting that the defendant "tried to 'corrupt' [another] by exhorting her to violate her legal duty to testify truthfully in court."  *Id.* at 630.  DeGrave is thus

---

*obstruct, or impede* the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States, or *the due and proper exercise of the power of inquiry under which any inquiry or investigation is being had by either House, or any committee of either House or any joint committee of the Congress*" shall be punished.  18 U.S.C. § 1505 (emphasis added).

[10] 18 U.S.C. § 1512(b)(1) states, in relevant part: "Whoever knowingly uses intimidation, threatens, or corruptly persuades another person, or attempts to do so, or engages in misleading conduct toward another person, with intent to . . . influence, delay, or prevent the testimony of any person in an official proceeding" shall be punished.  18 U.S.C. § 1512(b)(1).

incorrect that *Poindexter* alone shows that § 1512(c)(2) is unconstitutionally vague, either facially or as applied here.[11]

　　To determine if "corruptly" renders the statute unconstitutionally vague, the Court must look to the meaning of the term in this particular provision, as well as any judicial gloss placed on it. *Lanier*, 520 U.S. at 266–67. Because Congress has not supplied a definition of "corruptly" for purposes of § 1512(c), the Court looks to its "common or popular meaning[]." *United States v. North*, 910 F.2d 843, 881 (D.C. Cir. 1990), *superseded in irrelevant part by* 920 F.3d 940 (D.C. Cir. 1990). As commonly defined, "corruptly" means "[i]n a corrupt or depraved manner." *Corruptly*, def. a, Oxford English Dictionary (2d ed. 1989). Its root, the adjective "corrupt," means "morally degenerate and perverted" or "characterized by improper conduct (such as bribery or the selling of favors)." *Corrupt* (adj.), defs. 1(a), (b), Merriam-Webster's Collegiate Dictionary. And the verb "to corrupt" can be used transitively, meaning "to change from good to bad in morals, manners, or actions," *Corrupt* (transitive verb), def. 1(a), Merriam-Webster's Collegiate Dictionary, or intransitively, meaning "to become morally debased," *Corrupt* (intransitive verb), def. 1(b), Merriam-Webster's Collegiate Dictionary.

　　In this sense, the plain meaning of "corruptly" encompasses both corrupt (improper) *means* and corrupt (morally debased) *purposes*. As Judge Silberman put it in *North*, "[T]o say that someone corruptly endeavors to obstruct an inquiry might mean (1) that he does so with a corrupt purpose or (2) that he does so by independently corrupt means, or (3) both." *North*, 910 F.3d at 942–43 (Silberman, J., concurring in part and dissenting in part) (construing § 1505).

---

[11] Congress superseded *Poindexter* in significant part by defining "corruptly," only for purposes of § 1505, to "mean[] acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or destroying a document or other information." 18 U.S.C. 1515(b); *see Edwards*, 869 F.3d at 502 n.5.

Because the D.C. Circuit has cautioned against relying on vague, nebulous terms like "improper" and "immoral," *see Poindexter*, 951 F.2d at 379–80, the Court turns to judicial decisions to determine whether "corruptly" has been otherwise defined such that the defendants were sufficiently on notice that their alleged conduct violated the statute.

Although the D.C. Circuit has not addressed the meaning of "corruptly" in § 1512(c)(2), a number of other circuits have.  Relying on those cases, the government argues that "corruptly" in § 1512(c)(2) "includes two components: (1) intent to obstruct, impede, or influence; and (2) wrongfulness."  Gov't Opp'n at 18, Dkt. 53.  *See, e.g.*, *United States v. Friske*, 640 F.3d 1288, 1291 (11th Cir. 2011) (defining "corruptly" as acting "with an improper purpose and to engage in conduct knowingly and dishonestly with the specific intent to subvert, impede or obstruct the [official proceeding]" (internal quotation omitted)); *United States v. Gordon*, 710 F.3d 1124, 1151 (10th Cir. 2013) (same); *United States v. Watters*, 717 F.3d 733, 735 (9th Cir. 2013) (upholding jury instructions defining "corruptly" as acting with "consciousness of wrongdoing"); *United States v. Matthews*, 505 F.3d 698, 705–06 (7th Cir. 2007) (upholding jury instructions defining "corruptly" as acting "with the purpose of wrongfully impeding the due administration of justice," with "wrongfully" meaning that only those who had "no legal right to impede justice" should be convicted)).  The government also contends that the defendant's actions must have a "nexus," which is "a relationship in time, causation, or logic," with the official proceeding.  Gov't Opp'n at 32–33 (quoting *United States v. Aguilar*, 515 U.S. 593, 599–600 (1995)); *see United States v. Phillips*, 583 F.3d 1261, 1263 (10th Cir. 2009) (applying the *Aguilar* nexus requirement to § 1512(c)(2)).  That is, the defendant must "contemplate[] a particular, foreseeable [official] proceeding," *United States v. Young*, 916 F.3d 368, 386 (4th Cir.

2019), and "interference with the proceeding must be the natural and probable effect of [his] conduct," *Phillips*, 583 F.3d at 1264.

The Court agrees that § 1512(c)'s proscription of knowing conduct undertaken with the specific intent to obstruct, impede, or influence the proceeding provides a clear standard to which the defendant can conform his behavior.  *Bronstein*, 849 F.3d at 1107.  And this nexus requirement, first applied by the Supreme Court to 18 U.S.C. § 1503, *see Aguilar*, 515 U.S. at 599, has since been applied to § 1512(c) by every circuit to consider the question, *see Young*, 916 F.3d at 386 (collecting cases).  But defining "corruptly" to involve "wrongfulness" presents a closer question because it may be subject to the same infirmities that *Poindexter* found in the words "immoral" and "improper."  *See* 951 F.2d at 379.

In considering the meaning of "corruptly" (or wrongfully), courts have drawn a clear distinction between lawful and unlawful conduct.  In *Arthur Andersen LLP v. United States*, 544 U.S. 696 (2005), the Supreme Court explained, in the context of § 1512(b), that "corruptly" is "associated with wrongful, immoral, depraved, or evil."  *Id.* at 705 (internal quotations omitted). It noted that persuading someone to withhold testimony or documents from the government is not always "wrongful"—for instance, when persuading someone to invoke his or her right against self-incrimination or the marital privilege, or when pursuing valid document retention policies.  *Id.* at 704.  And in *North*, Judge Silberman explained that a defendant "corruptly" obstructs or influences a congressional inquiry when he uses "independently criminal" means. 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part); *see also Matthews*, 505 F.3d at 706 (explaining that the word "wrongfully" guards against convicting someone who has a

"legal right"—such as the right to avoid self-incrimination—to obstruct or impede).[12]  By contrast, a defendant who withholds documents or testimony because of a valid privilege, *see United States v. Farrell*, 126 F.3d 484, 488 (3d Cir. 1997),[13] lawfully lobbies Congress ahead of an official proceeding, or engages in First Amendment-protected protest activity does not act "corruptly" within the meaning of the statute.

These real-world examples draw a line that is consistent with the definition of "wrongful": "[t]hat is contrary to law, statute, or established rule."  *Wrongful*, def. 3(a), Oxford English Dictionary (2d ed. 1989).  The ordinary meaning of "wrongful," along with the judicial opinions construing it, identify a core set of conduct against which § 1512(c)(2) may be constitutionally applied—"independently criminal" conduct, *North*, 910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part) that is "inherently malign," *Arthur Andersen*, 544 U.S. at 704, and committed with the intent to obstruct an official proceeding, *see Friske*, 640 F.3d at 1291–92.  "Corruptly" (or wrongfully) also acts to shield those who engage in lawful, innocent conduct—even when done with the intent to obstruct, impede, or influence the official proceeding—from falling within the ambit of § 1512(c)(2).  *See Arthur Andersen*, 544 U.S. at 705–06.

The indictment in this case alleges obstructive acts that fall on the obviously unlawful side of the line.  It alleges that the defendants obstructed and impeded the congressional

---

[12] In the context of § 1512(b), courts have agreed that persuading someone to testify falsely, or bribing someone to withhold information, constitutes corrupt persuasion.  *United States v. Khatami*, 280 F.3d 907, 912–13 (9th Cir. 2002) (collecting cases).  Both violations involve elements of unlawfulness—on the one hand, encouraging the subject of the persuasion to violate his or her legal duty, and on the other, using independently unlawful means like bribery.

[13] *Farrell* concluded that "a noncoercive attempt to persuade a coconspirator who enjoys a Fifth Amendment right not to disclose self-incriminating information about the conspiracy to refrain, in accordance with that right, from volunteering information to investigators" did not constitute corrupt persuasion under § 1512(b)(3).  126 F.3d at 488.

proceeding to certify the election results.  Superseding Indictment ¶ 37.  And it further alleges

that the defendants engaged in advance planning, forcibly breached the Capitol building,

assaulted Capitol police officers, and encouraged others to steal laptops and paperwork from the

Senate Chamber.  *Id.* ¶¶ 15-33.  This alleged conduct is both "independently criminal," *North*,

910 F.2d at 943 (Silberman, J., concurring in part and dissenting in part) and "inherently

malign," *Arthur Andersen*, 544 U.S. at 704.  And it was allegedly done with the intent to obstruct

the congressional proceeding, *see Friske*, 640 F.3d at 1291.  Assuming that the government can

meet its burden at trial, which is appropriate to assume for purposes of this motion, the

defendants were sufficiently on notice that they corruptly obstructed, or attempted to obstruct, an

official proceeding under § 1512(c)(2).

The Court recognizes that other cases, such as those involving lawful means, *see, e.g.,*

*Arthur Andersen*, 544 U.S. at 703, will present closer questions.[14]  But the Court need not decide

here what constitutes the outer contours of a "corrupt purpose."  Because the indictment alleges

that the defendants used obvious criminal means with the intent to obstruct an official

proceeding, their conduct falls squarely within the core coverage of "corruptly" as used in

---

[14] As courts have noted, difficult questions arise when *lawful means* are used with a corrupt
purpose and with the intent to obstruct, influence, or impede an official proceeding.  *See, e.g.,*
*United States v. Doss*, 630 F.3d 1181, 1189 (9th Cir. 2011); *North*, 910 F.2d at 943 (Silberman,
J., concurring in part and dissenting in part).  In Judge Silberman's view, the purpose inquiry
should focus narrowly on whether the defendant "was attempting to secure some advantage for
himself or for others than was improper or not in accordance with the legal rights and duties of
himself or others." *North*, 910 F.2d at 944 (Silberman, J., concurring in part and dissenting in
part); *see also Aguilar*, 515 U.S. at 616 (Scalia, J., concurring in part and dissenting in part) (the
"longstanding and well-accepted meaning" of "corruptly" is "[a]n act done with an intent to give
some advantage inconsistent with official duty and the rights of others") (internal quotation
marks omitted).  *See also United States v. Kanchanalak*, 37 F. Supp. 2d 1, 4 (D.D.C. 1999)
(noting that it may be too vague to require only that a defendant "act[ed] with an *improper*
purpose").  This case, which allegedly involves *unlawful means* engaged in with the intent to
obstruct, does not raise these challenging questions.

§ 1512(c)(2).  *See Edwards*, 869 F.3d at 502 ("While the corrupt-persuasion element might raise vagueness questions at the margins, the wrongdoing alleged here falls comfortably within the ambit of the statute.").  The Court will address further refinements of the definition of "corruptly" with jury instructions.

In sum, because the government has alleged that the defendants acted corruptly, or unlawfully, and with the intent to obstruct, as defined in § 1512(c)(2), the defendants were on notice that their conduct violated the statute and "no more is required" at this stage of the prosecution.  *United States v. Concord Mgmt. & Consulting LLC*, 347 F. Supp. 3d 38, 57 (D.D.C. 2018).  Thus, the Court will deny DeGrave's motion to dismiss on this basis.

## CONCLUSION

For the foregoing reasons, the defendants' motion to dismiss is denied.  A separate order consistent with this decision accompanies this memorandum opinion.

DABNEY L. FRIEDRICH
United States District Judge

Date: December 10, 2021