UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 21-cr-88 (DLF) |
| RONALD SANDLIN and ) | |
| NATHANIEL DEGRAVE, ) | *Ex Parte* **(as to Defendant Sandlin)** |
| ) | **and Under Seal** |
| Defendants. ) | |

## JOINT MOTION FOR RELEASE PENDING SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, and defendant Nathaniel DeGrave, through his counsel of record William L. Shipley, respectfully submit this joint motion for the defendant's release from detention pending sentencing pursuant to 18 U.S.C. § 3143(a). In support of this motion, the parties submit that, following the defendant's guilty plea in this matter,[1] there is clear and convincing evidence that the defendant is not a danger to the community or a flight risk, and that strict terms and conditions of release can assuage any of the Court's concerns in this regard.

I.  **Relevant Background**

The parties have entered into a written plea agreement pursuant to which the defendant will plead guilty to violations of 18 U.S.C. § 1512(k) (Conspiracy to Obstruct an Official Proceeding) and 18 U.S.C. § 111(a) (Assaulting, Resisting, or Impeding Certain Officers). As part of the plea agreement, the defendant has agreed to cooperate in the government's investigation and prosecution of others, as contemplated under section 5K1.1 of the United States Sentencing Guidelines.

---

[1] The parties agree that the government's position on the defendant's release pending sentencing is contingent on his accepting responsibility for his actions by entering a guilty plea in open court and confirming his cooperation agreement on the record.

1

The defendant has met with representatives of the Department of Justice, the Federal Bureau of Investigation, and Homeland Security Investigations on multiple occasions and provided information related to January 6 matters as well as unrelated matters.[2]  The parties expect that the defendant's cooperation will continue and could include providing testimony in this case and others.

## II.     The Defendant Is Eligible For and Should Be Granted Release Pending Sentencing Pursuant to 18 U.S.C. § 3143(a).

Title 18 of the United States Code § 3143(a)(1) provides for release pending sentencing of any defendant, except as provided in subparagraph (2), if the Court finds by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c).  Subparagraph (2) provides for mandatory detention of persons found guilty of crimes enumerated in section 3142(f)(1)(A-C).  The crimes to which the defendant is pleading guilty do not fall within those subsections, and therefore detention pending sentencing is not mandatory.[3]

By the terms of the statute, the defendant is eligible for release pending sentencing under § 3143(a) if this Court determines by clear and convincing evidence that he is not likely to flee prior to sentencing, and that his release pending sentencing does not pose a danger to any person or the community.  For the reasons that follow, the parties submit that the defendant is neither a

---

[2] The parties are willing to provide more details as to the substance of those conversations at the bond hearing in this matter under seal, in light of security and investigative concerns, if the Court would find it helpful.

[3] Section 3142(f)(1) provides for a presumption of detention in the pretrial context for any offense that falls within the following parameters: (A) a crime of violence, a violation of section 1591, or an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; (B) an offense for which the maximum sentence is life imprisonment or death; and (C) an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. 951 et seq.), or chapter 705 of title 46.

2

flight risk nor a danger to the community, his release pending sentencing would be prudent, and any concerns the Court may have can be mitigated by strict terms and conditions of release.

### A.  Initial Bases for DeGrave's Pretrial Detention

The defendant was initially arrested in this matter on January 28, 2021, on nine counts in relation to the riot at the United States Capitol on January 6, 2021.[4]  By way of background, during an appearance in the District of Nevada on February 3, 2021, DeGrave was ordered detained pending transfer to this district following the government's motion for his detention as an obstruction risk and danger to the community under 18 U.S.C. § 3142(f)(2)(B) (Serious Risk to Obstruct Justice).  Notably, the government did not seek to detain DeGrave under section 3142(f)(2)(A)—the flight risk provision of the Bail Reform Act—whereas it did for his co-defendant Ronald Sandlin, who exhibited a pattern of crisscrossing the country in an attempt to evade law enforcement detection.  DeGrave instead retreated to and remained in his Las Vegas residence immediately after January 6, 2021.

During his arraignment in this Court on March 16, 2021, DeGrave moved for pretrial release.  This Court, the Honorable Paul Friedman presiding, requested further briefing and conducted two hearings on the motion.  On May 6, 2021, Judge Freidman issued an Order denying the motion for release.  ECF No. 37.  On May 14, 2021, Judge Freidman issued a 39-page Memorandum Opinion setting forth in detail his reasoning for denying the motion.  ECF No. 44.

---

[4] On September 15, 2021, a Superseding Indictment was returned in this case, joining defendant DeGrave with defendant Ronald Sandlin in one case and adding multiple counts, including Conspiracy to Obstruct an Official Proceeding.  Previously, defendant DeGrave was the lone defendant in *United States v. DeGrave*, 21-cr-90, before Judge Friedman.

Judge Friedman detained DeGrave pending trial due to his risk of obstruction and risk of future violence, both of which the Court found rendered him a danger to the community. Judge Friedman did not hold him as a flight risk. Rather, Judge Friedman articulated the concern that, if released, DeGrave would be likely to attempt to obstruct justice, and that there was a serious risk he would engage in violence in support of his political ideology based on his having planned for violence prior to arriving in Washington on January 6, assaulting officers on that day, forcing open doors inside the Capitol, and enabling others to enter the building and access restricted areas. ECF No. 44, at 31.

With respect to the obstruction risk, the Court found that DeGrave had: (1) deleted his social media about the events at the Capitol and asked others to do the same; (2) began using encrypted messaging applications after January 6; (3) allowed co-defendant Sandlin to stay with him in Las Vegas when he understood that Sandlin was seeking to evade the FBI; and (4) lied to the FBI regarding his presence in the Capitol on January 6. The Court also was concerned that DeGrave would attempt to interfere with government witnesses, including two who resided in Las Vegas, which is where DeGrave had proposed to live if released.

Judge Friedman also found that DeGrave posed a serious risk of future violence based on: (1) his and his co-conspirators' significant planning for violence and traveling to Washington D.C. in a car full of weapons and gear; (2) his statements prior to January 6 reflecting a plan to confront and perpetrate violence; (3) his statements reflecting a belief that he should take matters into his own hands to defend his country; and (4) DeGrave acting on those beliefs by assaulting police officers inside the Capitol, forcibly gaining access to restricted places, and calling on others to steal property from the Senate Chamber.

Judge Friedman also discussed Mr. DeGrave's self-professed desire to generate publicity and notoriety through interviews or posting video footage of the events in order to "capitalize on his involvement in the riot." ECF No. 44, at 38. Judge Freidman noted that such discussions called into question whether DeGrave had "put that episode behind him." *Id.*

### B. Changed Circumstances Justifying His Release Pending Sentencing

The facts in this case have developed significantly since the government initially sought the defendant's detention back in February 2021. As noted above, DeGrave has participated in multiple interviews with officials of various government agencies. These officials have concluded that DeGrave has been honest and forthcoming. He has volunteered information that law enforcement officials have verified as true as well as supplied information that has advanced government investigations regarding the events of January 6 and other unrelated matters. Furthermore, and perhaps most importantly, DeGrave has entered a cooperation agreement, demonstrated what the government believes is sincere remorse, and decided to accept responsibility for his actions leading up to and on January 6 at the upcoming plea hearing. The government's fears regarding potential interference with witnesses have also abated since the detention proceedings.[5] For these reasons, the government's prior concern that DeGrave might engage in obstructive conduct if released, which animated its initial detention request, has been greatly diminished.

The government's concerns regarding the defendant's risk of future violence have also been mitigated in light of his past and anticipated cooperation. DeGrave has been questioned extensively on the circumstances surrounding the assaults charged in this case, his statements reflecting a desire to engage in violence, and his relative role vis-à-vis his co-conspirators in

---

[5] Further explanation can be provided under seal during the bond hearing.

planning for violence at the Capitol on January 6. These conversations have led the government to believe that the defendant's actions and statements leading up to and on January 6 were motivated by bravado, machismo, and a desire to gain notoriety and profit by video-recording the events on January 6th and disseminating the footage through social media, in addition to his misguided beliefs about the 2020 presidential election. These root causes of his actions can be adequately addressed with strict terms and conditions of release, including home incarceration, a mental health assessment and counseling (if deemed necessary), GPS monitoring, and device monitoring by Pretrial Services. Furthermore, since profiting off of his conduct at the Capitol would go against the spirit of his cooperation agreement, the parties do not expect that the defendant will attempt to sell any footage from January 6 or otherwise capitalize on the events of that day.

Apart from his acts of shoving U.S. Capitol Police officers on January 6, 2021, DeGrave has no history of violence and no criminal convictions apart from underage consumption of alcohol. He has every motivation to comply with strict terms and conditions of release to avoid jeopardizing his cooperation credit and the potential motion by the government pursuant to Section 5K of the sentencing guidelines.

Accordingly, the parties submit that, following his entry of a plea of guilty pursuant to a cooperation agreement in this matter, the defendant is not a danger to the community.

### C. Not a Flight Risk

The defendant is not a flight risk in light of his agreement to cooperate and the fact that he has already served 20 months, with good time approximated, of any sentence that might be imposed after an anticipated reduction under section 5K1.1 of the U.S. Sentencing Guidelines. DeGrave was never deemed a flight risk by the government or this Court, as he did nothing to

trigger that particular concern. As noted above, immediately after January 6, he flew home to his residence in Las Vegas and stayed put. He has lived in Las Vegas for several years and has no known ties to foreign jurisdictions. Finally, one of DeGrave's lawyers, Ryan Marshall, has offered to accompany the defendant from D.C. to Las Vegas and help him get settled at his proposed residence.

The parties therefore submit that the defendant's strong incentive to earn full cooperation credit coupled with strict conditions of release, including GPS monitoring, will ensure the defendant's appearance at sentencing.

### D. Prudential Considerations Counseling in Favor of Release Pending Sentencing

The Court should release the defendant on strict terms and conditions of release pending sentencing for prudential reasons as well. First, although the government is confident in the U.S. Marshals' ability to enforce separation orders, the defendant understandably has significant personal security concerns as an outed cooperator in the D.C. jail following the public plea hearing on June 27. The separation order based on defendant's cooperation likely means he will be held in administrative segregation (i.e., solitary confinement) indefinitely. The parties submit that ordering the defendant released to home incarceration and on other stringent conditions will avoid this unfortunate circumstance and address any community danger and flight risk concerns.

In addition, releasing DeGrave to home incarceration could serve as a "test run" of sorts to demonstrate to this Court what level of specific deterrence beyond the time he has already served is necessary for this particular defendant. In other words, whether he violates his terms and conditions of release will be highly relevant for sentencing purposes. The parties thus

believe that it would be prudent for the Court to fashion strict terms and conditions of release that would allow the defendant to prove himself worthy of a potential time-served sentence.[6]

## CONCLUSION

For the forgoing reasons, the United States and defendant Nathaniel DeGrave respectfully request that the Court release the defendant pending sentencing pursuant to § 3143(a)(1) on the proposed terms and conditions of release filed as an attachment to this motion.

Respectfully submitted,

MATTHEW GRAVES
UNITED STATES ATTORNEY

By:    */s/ Jessica Arco*
Jessica Arco
D.C. Bar No. 1035204
Trial Attorney – Detailee
U.S. Attorney's Office
601 D Street NW
Washington, DC 20530
Jessica.arco@usdoj.gov

*/s/ William L. Shipley, Jr.*
William L. Shipley, Jr.
Hawaii Bar No. 9066
P.O. Box 745
Kailua, Hawaii 96734
808Shipleylaw@gmail.com

---

[6] As the parties are well aware and as set forth in the plea agreement, the government has made no commitment to cap its allocution at a time-served sentence but also is not ruling out that possibility.