UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )( | |
| )( | Criminal No. 21-88 (DLF) |
| v.       )( | Judge Friedrich |
| )( | |
| RONALD SANDLIN       )( | |

**EMERGENCY MOTION TO REDUCE SENTENCE
AND POINTS AND AUTHORITY IN SUPPORT THEREOF**

COMES NOW the defendant, Ronald Sandlin, by and through undersigned counsel and respectfully moves this Honorable Court, pursuant to 18 U.S.C. § 3582(c)(2) to reduce his prison sentence from 63 months to 51 months due to a retroactively applicable amendment to the U.S. Sentencing Guidelines impacting so-called "zero-point offenders." See Amend. 821 (Part B), U.S.S.C. (eff. Nov. 1, 2023) (promulgated as U.S.S.G § 4C1.1). Mr. Sandlin makes this motion on an emergency basis because, if the Court reduces his sentence to 51 months, that sentence will be less than the time he has already served. In support of this motion, Mr. Sandlin would show:

1.      On September 30, 2022, pursuant to an agreement that he had reached with the government, Ronald Sandlin pled guilty in this case to one count of Conspiracy to Obstruct an Official Proceeding under 18 U.S.C. § 1512(k) and one count of Assaulting, Resisting, or Impeding Certain Officers under 18 U.S.C. § 111(a). See Plea Agreement (ECF #84) at 1.

2.      On December 9, 2022, Mr. Sandlin was sentenced to 63 months incarceration. See Judgment (ECF #99) at 2. This was at the low end of the guidelines range the court found applied to Mr. Sandlin. That range was 63-78 months. See Statement of Reasons (ECF #100) at

1

1.  In sentencing Mr. Sandlin, the Court determined that Mr. Sandlin's total offense level was 26. Id.

3.  After Mr. Sandlin was sentenced, the U.S. Sentencing Commission amended the Sentencing Guidelines to give offenders a two-point reduction in their total offense level if they met the following criteria:

> 1. the defendant did not receive any criminal history points from Chapter Four, Part A;
>
> 2. the defendant did not receive an adjustment under §3A1.4 (Terrorism);
>
> 3. the defendant did not use violence or credible threats of violence in connection with the offense;
>
> 4. the offense did not result in death or serious bodily injury;
>
> 5. the instant offense of conviction is not a sex offense;
>
> 6. the defendant did not personally cause substantial financial hardship;
>
> 7. the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> 8. the instant offense of conviction is not covered by §2H1.1 (Offenses Involving Individual Rights);
>
> 9. the defendant did not receive an adjustment under §3A1.1 (Hate Crime Motivation or Vulnerable Victim) or §3A1.5 (Serious Human Rights Offense); and
>
> 10. the defendant did not receive an adjustment under §3B1.1 (Aggravating Role) and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848.

U.S.S.G. § 4C1.1(a).  This amendment is commonly referred to as Amendment 821, part B.

4.  Mr. Sandlin meets all the above-referenced criteria for getting a two-point reduction in his total offense level.  He has zero criminal history points.  See Presentence Investigation Report (PSR) ¶ 16; he did not receive any adjustment for terrorism; the offense did

2

not result in death or serious bodily injury; the offense was not a sex offense; he did not possess a dangerous weapon; he did not personally cause substantial financial hardship; the offense of conviction is not covered by §2H1.1; he did not receive any adjustments under §§ 3A1.1 or 3A1.5; and he did not receive a § 3B1.1 adjustment and engage in a continuing criminal enterprise. It is expected, however, that the government will claim that Mr. Sandlin did use violence or credible threats of violence in connection with his offenses and that he possessed and transported a firearm or other dangerous weapon in connection with them.

5. In regards to whether Mr. Sandlin used violence or credible threats of violence in connection with his offenses, it is true that, in the Statement of Offense he agreed to when he pled guilty (ECF #85), he admitted that, he pushed against police officers who were blocking a door inside the Capitol to get to the door to open it so that people on the other side could pass through and that, in the process of this, he grabbed an officer's helmet. Statement of Offense at 8. Further, he admitted that, in another instance, he shoved police officers who were trying to close the doors to the Senate gallery in an attempt to keep them from closing the doors and that, in the process of this, his hand made contact with the side an officer's head. Id. at 9. However, none of these actions just described amount to use of violence or the making of credible threats of violence.

6. In order to "us[e] violence," one must "use[] physical force with the intent to injure[.]" United States v. Pineda-Duarte, 933 F.3d 519, 523 (6th Cir. 2019) (interpreting U.S.S.G.§ 2D1.1(b)(2)'s identically-worded "used violence" provision in the absence of a guidelines definition and relying on Black's Law Dictionary and Webster's Dictionary). And in order to make "credible threats of violence," one must "express an intention to inflict pain, harm, or punishment" through violence. See Hernandez-Barajas, 71 F.4th at 1107 (cleaned up)

3

(interpreting U.S.S.G. § 2D1.1(b)(2) and quoting definition of "threats" from American Heritage Dictionary of the English Language 1813 (5th ed. 2016)).  Even pushing of an officer is not sufficient to satisfy these definitions where the defendant lacks the requisite intent to injure.  See United States v. Jaimes-Molina, No. 17-cr-69, 2019 WL 4254459, at *5 (N.D. Ind. Sept. 9, 2019) (finding that even though defendant shoved officer, defendant lacked the intent for the act to qualify as a credible threat to use violence).  It should be noted that, in the January 6 context, a district judge has noted:

> Contemporary dictionaries define "violence" to mean "[t]he use of physical force, usua[ally] accompanied by fury, vehemence, or outrage; esp[ecially], physical force unlawfully exercised with the intent to harm," Violence, Black's Law Dictionary (11th ed. 2109), or as the "use of physical force so as to injure, abuse, damage, or destroy," Violence, Miriam Webster, https://www.meriam-webster.com/dictionary/violence.

United States v. Yang, 23-cr-100 (JDB), Memorandum Opinion (ECF #38) at 6.  In Yang, the district judge found that the defendant did not use "violence" for the purposes of § 4C1.1 when he grabbed an officer's wrist and then later another officer's baton during a scuffle inside the Capitol.  Id. at 2-3, 7-8.  Given all the above, it is submitted that the conduct that Mr. Sandlin admitted to in the Statement of Offense did not involve the use of violence or the making or credible threats of violence.

7.      In regards to whether Mr. Sandlin possessed and transported a firearm or other dangerous weapon in connection with his offenses, it is true that, in the Statement of Offense, he admitted that he and his co-conspirators brought weapons with them when they travelled to D.C. area to participate in the rallies and protests that were to occur on the National Mall on January 5-6, 2021.  Statement of Offense at 4-6.  However, the Statement of Offense also indicates that Mr. Sandlin and his co-conspirators did not actually form their agreement to go to the Capitol and occupy it until lunchtime on January 6, 2021.  After making this agreement, they then

4

entered into D.C., went to the Capitol, and entered the building. Id. at 7-8. Moreover, the assault that Mr. Sandlin pled guilty to occurred once he was in the building. Id. at 8. According to the Statement of Offense, when Mr. Sandlin and his co-conspirators entered D.C., went to the Capitol, and entered it, Mr. Sandlin was in possession of "a knife." Id. at 7. The knife is not further described, and the Statement of Offense makes no other mention of any other items in Mr. Sandlin's possession that could be characterized as weapons. Id. at 7-8. In pertinent part, the Guidelines define a "dangerous weapon" as "an instrument capable of inflicting death or serious bodily injury." U.S.S.G. § 1B1.1, Application Note (D). Here, there is nothing known about what kind of "knife" Mr. Sandlin possessed or about what condition it was in. Accordingly there, is nothing to justify the conclusion that it meets the above-indicated definition of a "dangerous weapon."

8. Because Mr. Sandlin meets all the eligibility requirements for getting a two-point reduction under U.S.S.G § 4C1.1, the Court can now reduce his sentence pursuant to the provision. 18 U.S.C. § 3582(c)(2) authorizes the Court to reduce a prison sentence imposed "in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission . . . if such a reduction is consistent with applicable policy statements issued by the Commission." Id.; see also U.S.S.G. § 1B1.10(a)(1). The Commission's applicable policy statements create two relevant limitations to granting a sentence reduction: (1) any reduction cannot go below the low end of the now applicable guidelines range, see U.S.S.G. § 1B1.10(b)(2)(A); and (2) any order reducing the term of imprisonment must have an effective date of February 1, 2024 or later, see U.S.S.G. § 1B1.10(e)(2); id., application note 7.

9. Here, if Mr. Sandlin is given a two-point reduction is his total offense level, it will bring that level down for 26 to 24. Given that Mr. Sandlin has no criminal history points, his guidelines range would be 51-63 months. Previously, when sentencing Mr. Sandlin based on him having a guidelines range of 63-78 months, the Court gave Mr. Sandlin a low-end sentence of 63 months. Presumably, then, if the court were to re-sentence Mr. Sandlin based on him having a guidelines range of 51-63, the Court would give him a low-end sentence of 51 months—that is, one year less than the sentence he is currently serving. Currently, on the 63-month sentence he is currently serving, Mr. Sandlin is set be released on January 14, 2025—that is, three and one half months from now. Accordingly, if the Court were to give Mr. Sandlin a sentence of 51 months now, Mr. Sandlin would have already served the entirety of it. For this reason, Mr. Sandlin requests that this motion be addressed on an emergency basis.

WHEREFORE, the defendant, Ronald Sandlin, moves this Honorable Court to reduce his sentence from 63 months to 51 months.

Respectfully submitted,

\_\_\_\_/s/_____
Jerry Ray Smith, Jr.
D.C. Bar No. 448699
Counsel for Ronald Sandlin
717 D Street, N.W.
Suite 310
Washington, DC 20004
E-mail: jerryraysmith@verizon.net
Phone: (202) 641-4211