# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Case No. 21-CR-88 (DLF)** |
| **RONALD SANDLIN,** | |
| **Defendant.** | |

## GOVERNMENT'S OPPOSITION TO DEFENDANT
## RONALD SANDLIN'S MOTION TO REDUCE SENTENCE

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this response to Defendant Ronald Sandlin's emergency motion to reduce sentence. ECF No. 133. Sandlin, who was sentenced on Dec. 9, 2022, to 63 months of incarceration followed by 36 months of supervised release,[1] asks that the Court reduce his sentence by 12 months through retroactive application of U.S.S.G. § 4C1.1. However, because Sandlin's offense conduct included violence, threats of violence, and the possession and transportation of firearms and other dangerous weapons, Sandlin is ineligible for a Section 4C1.1 reduction for multiple reasons, to say nothing of the 18 U.S.C. § 3553(a) factors weighing against such a reduction. Sandlin's motion should be denied.

## I.    BACKGROUND

On January 6, 2021, hundreds of rioters, Sandlin among them, unlawfully broke into the U.S. Capitol building in an effort to disrupt the peaceful transfer of power in the wake of the 2020 U.S. Presidential Election. Many rioters attacked and injured police officers, sometimes with

---

[1] As of the date of this filing, Bureau of Prisons' inmate information available online to the public provides that Sandlin is housed at FCI Forrest City Low with a projected release date of Dec. 30, 2024.

dangerous weapons; they terrified congressional staff and others on scene that day, many of whom fled for their safety; and they ransacked this historic building—vandalizing, damaging, and stealing artwork, furniture, and other property.

Sandlin played a significant role in the destruction that day. Along with Co-defendants Nathaniel DeGrave and Josiah Colt, Sandlin traveled to Washington, D.C. in advance of January 6 with a car full of weapons: knives, bear spray, and a M&P pocket pistol. Sandlin anticipated and prepared for violence that day, to the point that he solicited funds in part to acquire and transport weapons to be used that day.

On January 6, 2021, Sandlin incited others to join the "boogaloo," or armed civil conflict, by calling on them to "take" and "occupy the Capitol," repeating his rallying cry, "freedom is paid for with blood," no less than four times throughout the day. These were not empty words by Sandlin; he directly assaulted at least two U.S. Capitol Police ("USCP") officers, including by attempting to remove one officer's helmet, and abetted the assaults of four others. He led the mob's charge against officers at two separate choke points—the Rotunda doors and the Senate Gallery— leading to the violent breach of those spaces and risking further injury to officers and members of Congress and their staff. In an effort to threaten and intimidate USCP officers into leaving their posts, Sandlin shouted before assaulting them at the Rotunda: "your life is not worth it … you're going to die, get out of the way."

On February 5, 2021, Sandlin was charged by indictment with multiple felony and misdemeanor offenses stemming from his conduct at the Capitol on January 6. ECF No. 6. On September 15, 2021, a grand jury in the District of Columbia returned a superseding indictment against Sandlin and DeGrave, joining them in a single case and charging them with violations of 18 U.S.C. §§ 1512(c)(2) (obstruction of an official proceeding); 1512(k) (conspiracy to obstruct

an official proceeding); 111(a)(1) (assaulting, resisting, or impeding certain officers); 231(a)(3) (certain acts during a civil disorder); and 1752(a) (unlawful entry and disorderly conduct on restricted grounds). ECF No. 46.

On September 30, 2022, Sandlin pled guilty pursuant to a plea agreement to one count of Conspiracy to Obstruct an Official Proceeding, in violation of 18 U.S.C. § 1512(k), and Assaulting, Resisting, or Impeding Certain Officers, in violation of 18 U.S.C. § 111(a)(1). *Sept. 30, 2022 Minute Order*. In relation to this plea, Sandlin signed a 12-page Statement of Offense detailing his criminal conduct in relation to these two offenses. ECF No. 85.

In the Statement of Offense, Sandlin admitted that on the afternoon of January 6, 2021, he and his co-defendants breached the Capitol building, threatened police officers with violence, and then violently assaulted those police officers. Specifically, Sandlin admitted that after entering the Capitol through the Senate Wing Door at approximately 2:35 p.m., Sandlin made his way to the Rotunda, then approached the East Rotunda Doors, where three officers were blocking the entry of a crowd of 20 to 30 individuals. ECF No. 85, ¶ 27-28. Sandlin shouted at the officers: "get out of the way," "your life is not worth it today," and "you're going to die, get out of the way." *Id.* Sandlin then admitted that he "began pushing against the officers" and grabbed an officer's helmet as he and his co-defendants forced the Rotunda Doors open, allowing the mob to stream into the building. *Id.*

That was not the only violent conduct Sandlin admitted to engaging in on January 6, 2021. Following the assault at the East Rotunda Doors, Sandlin made his way to the Senate Gallery overlooking the Senate Chamber, where officers were attempting to lock the gallery to prevent rioters from gaining access. *Id.*, ¶ 31. Sandlin admitted that he "began shoving the officers in an

attempt to keep the doors to the Senate Gallery open" and that "[d]uring the shoving match, Sandlin's hand made contact with the side of Officer N.T.'s head." *Id.*, ¶ 32.

Additionally, Sandlin admitted to carrying and transporting dangerous weapons in relation to his offenses. As detailed in the Statement of Offense, Sandlin admitted that in advance of January 6, 2021, he attempted to organize and fundraise on social media to acquire firearms and transport them to Washington, D.C. *Id.*, ¶ 11. He and his co-defendants also discussed "shipping guns" to Sandlin's residence in Tennessee, where they planned to meet before traveling to D.C. in advance of January 6. *Id.*, ¶ 11. Sandlin brought his "little pocket gun" and a knife to Washington, D.C., and he carried his knife with him throughout the day on January 6. *Id.*, ¶¶ 12, 16.

## II.     RETROACTIVE APPLICATION OF U.S.S.G. § 4C1.1

U.S.S.G. § 4C1.1 provides for a two-level reduction for offenders with no criminal history points who are not subject to any of ten exclusionary criteria, including:

- § 4C1.1(2): the defendant did not receive an adjustment under § 3A1.4 (Terrorism);
- § 4C1.1(3): the defendant did not use violence or credible threats of violence in connection with the offense;
- § 4C1.1(4): the offense did not result in death or serious bodily injury;
- § 4C1.1(7): the defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense).

Section 4C1.1 may be applied retroactively to previously sentenced inmates, pursuant to U.S.S.G. § 1B1.10. Such a reduction may occur as provided in 18 U.S.C. § 3582(c)(2), which provides:

> [I]n the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to

the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

Accordingly, a reduction pursuant to U.S.S.G. § 1B1.10 is not mandatory. Instead, a "court *may* reduce the term of imprisonment, after considering the factors set forth in section 3553(a)." 18 U.S.C. § 3582(c)(2) (emphasis added). Additionally, any proceeding under Section 3582(c)(2) is not a full resentencing, so a court is not permitted to reconsider other sentencing determinations left unaltered by the Section 4C1.1 amendment. *Dillon v. United States*, 560 U.S. 817, 825-826 (2010); U.S.S.G. § 1B1.10(a)(3).

A court considering a motion for a sentence reduction due to § 4C1.1 must follow a two-step process. *Id.* at 826. First, the court must determine whether the defendant is eligible for a sentence reduction. A defendant is only eligible under § 4C1.1 reduction if: (1) the defendant has no criminal history points; (2) the defendant is not subject to any of the exclusionary criteria; (3) the amended guidelines range is lower than the range applied at the original sentencing hearing; and (4) the defendant did not previously receive a sentence at or below the bottom of the now-amended range other than for providing substantial assistance. *See* U.S.S.G. §§ 1B1.10, 4C1.1; *Dillon v. United States*, 560 U.S. at 827.

Even if step 1 is satisfied, a sentencing reduction is not required. Instead, § 1B1.10 directs that before reducing a defendant's sentence, the court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining … whether a reduction in the defendant's term of imprisonment is warranted" as well as "the extent of such a reduction." U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii); *see also id.* Background ("The authorization of such a discretionary reduction ... does not entitle a defendant to a reduced term of imprisonment as a matter of right.").

In particular, the court must consider public safety considerations, and may consider information regarding the post-sentencing conduct or situation of the defendant, whether positive

or negative. *See*, *e.g.*, *United States v. Darden*, 910 F.3d 1064, 1068 (8th Cir. 2018). Section 1B1.10 application note 1(B)(ii) directs that "[t]he court shall consider the nature and seriousness of the danger to any person or the community that may be posed by a reduction in the defendant's term of imprisonment." Application note 1(B)(iii) further directs that "[t]he court may consider post-sentencing conduct of the defendant that occurred after the imposition of the original term of imprisonment." That means the court may, but is not required, to consider the defendant's post-sentencing rehabilitation, if any. *See United States v. Rodriguez-Rosado*, 909 F.3d 472, 481 (1st Cir. 2018); *United States v. Banderas*, 858 F.3d 1147, 1150 (8th Cir. 2017).Such conduct would include social media posts and other statements relating to the Capitol riot on January 6, 2021.

If the court decides in its discretion to grant a reduction in sentence, it generally may not reduce the term of imprisonment to a term that is less than the minimum of the new guideline range. U.S.S.G. § 1B1.10(b)(2)(A). Thus, the court may not reduce the sentence below the range provided by the amended guideline, and "in no event may the reduced term of imprisonment be less than the term of imprisonment the defendant has already served." U.S.S.G. § 1B1.10(b)(2)(C).

## III.    NO SENTENCING REDUCTION IS WARRANTED

### A.  Sandlin is not eligible for a reduction under § 4C1.1.

Sandlin is not eligible for the sentencing reduction under the Section 4C1.1 amendment for multiple reasons. First, as he admitted when he plead guilty, Sandlin used violence and credible threats of violence on multiple occasions in relation to the offense. Sandlin's violent acts fall squarely within conduct other courts in this district have found to preclude eligibility for a § 4C1.1 reduction. *United States v. Bauer*, No. 21-cr-386-TNM, ECF No. 195 at 4-5 (defining violence for purposes of Section 4C1.1 as "[t]he use of physical force," typically "accompanied by fury, vehemence, or outrage" and "unlawfully exercised with the intent to harm," or as "the "exertion

of any physical force so as to injure or abuse."); *see also United States v. Gundersen*, 21-cr-137-RC, July 25, 2023 Sentencing Hearing (finding the defendant ineligible for Section 4C1.1 reduction following Section 111(a) conviction at stipulated bench trial in which the defendant admitted that he "rushed MPD officer C.B., hitting the officer with his arm, and was pushed back by another officer using a riot shield"); *United States v. Jacob Zerkle*, 22-cr-100-RBW, Feb. 22, 2024 Sentencing Hearing (finding the defendant ineligible for Section 4C1.1 reduction following Section 111(a) guilty plea in which the defendant admitted to "placing his hands on officers' persons and forcibly pushing … three officers with his hands" after shouting that the officers were "traitors"). Sandlin's physical, assaultive conduct against officers inside the Capitol on January 6 is closely analogous to the assaultive conduct found by other Courts in this district to preclude any reduction under Section 4C1.1, and his intent behind this assaultive conduct was revealed by the contemporaneous threats shouted at his victims that if they did not comply with his demands that they get out of the rioters' way, their lives would be in jeopardy.

Sandlin's threats of violence also disqualify him from a Section 4C1.1 reduction. When Sandlin approached officers during the January 6 riot and shouted at them to "get out of the way," "your life is not worth it today," and "you're going to die, get out of the way," ECF No. 85, ¶ 27-28, that was in no uncertain terms a "a believable expression of an intention to use physical force to inflict harm." *United States v. Bauer*, No. 21-cr-386-TNM, ECF No. 195 at 6. In *Bauer*, Judge McFadden found the defendant ineligible for a Section 4C1.1 reduction because the defendant "both used violence when she shoved Officer Coley and made credible threats of violence when she incited the mob to 'hang' Speaker Pelosi." *Id.* at 4. Sandlin's threatening statements were even more overt: he shouted his threats directly at his targets in order to intimidate them as he and other rioters surrounded the officers before proceeding to assault them. As Judge Howell articulated in

*United States v. Andrulonis*, "the context matters very critically" when evaluating whether a defendant's words and actions constituted a credible threat of violence sufficient to preclude Section 4C1.1 eligibility. No. 23-cr-085-BAH, Dec. 15, 2023 Sentencing Hearing (Transcript at 11-12). The factors Judge Howell mentioned in analyzing such context—"what the particular defendant being sentenced did; where he was; what he was seeing; what a person would reasonably understand was the volatility of the situation; the threat that whole situation would pose to others; the foreseeable harm of the situation; and the consequences of the specific defendant's individualized actions"—all underscore the severity of Sandlin's threats. His threatening statements were shouted at officers surrounded by officers just prior to him committing an assault that helped facilitated a major breach of the Capitol building. This conduct also renders Sandlin ineligible for a Section 4C1.1 reduction.

Section 4C1.1 is likewise unavailable to defendants who "possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense." This provides a third, independently sufficient reason Sandlin is ineligible for such a reduction. Sandlin fundraised around the acquisition of firearms, transported at least one firearm with his co-conspirators to Washington, D.C.[2], and brought at least one dangerous weapon—a knife—into the Capitol building with him on January 6. *United States v. Yoder*, No. 21-CR-505 (RCL), 2024 WL 3338937, at *4 (D.D.C. July 5, 2024) (holding that the defendant's sword was a dangerous weapon precluding eligibility

---

[2] For purposes of U.S.S.G. § 4C1.1, relevant conduct includes "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant," as well as certain acts of others when done as part of "a jointly undertaken criminal activity." U.S.S.G. § 1B1.3(a)(1). Even if Sandlin's own violence, threats, and possession of dangerous weapons did not preclude Section 4C1.1's applicability, the acts of his co-conspirators would.

for a 4C1.1 reduction because it "was metal and pointed, and thereby 'an instrument capable of inflicting death or serious bodily injury.'") (quoting U.S.S.G. § 1B1.1 app. n.1 (E)); see also *United States v. Roe*, 23-cr-277 (CKK) (ECF No. 28 at 2) (holding that a metal pitchfork with pointed tips operates as a dangerous weapon capable of inflicting serious bodily injury because it can cause stab wounds).

**B.  Even if § 4C1.1 applied, a sentence reduction is unwarranted.**

"The grant of authority to the district court to reduce a term of imprisonment is unambiguously discretionary," even when the guideline range is actually reduced. *United States v. Vautier*, 144 F.3d 756, 760 (11th Cir. 1998). A district court has "substantial discretion" in deciding whether to reduce a sentence. *United States v. Young*, 555 F.3d 611, 614 (7th Cir. 2009). Accordingly, many courts have denied sentence reductions even in situations where guideline amendments lowered the sentencing ranges. *See, e.g.*, *United States v. Strand*, 21-cr-085 (CRC), ECF No. 150 at 7-8; *United States v. Wilson*, 716 F.3d 50, 53 (2d Cir. 2013).

Here, the Section 3553(a) factors counsel against granting a sentence reduction. The nature and circumstances of Sandlin's offenses were remarkably severe. He prepared for and sought to amplify the violence he hoped and expected would take place that day. His refrain throughout the day was that "freedom is paid for with blood." He breached the Capitol all the way to the Senate Chamber, assaulting officers on multiple occasions to get himself and others there.

Sandlin's lack of remorse also demonstrates the importance of specific deterrence in his case. For example, after January 6, he told a friend on Facebook, "I'm a true patriot I'll do my time proudly." Even months later, after he had been arrested, Sandlin believed that he had "a divine destiny to fulfill and I/we made history that day and the full implications of our actions [have] yet

to be realized." In the wake of his offense, he attempted to profit from his unlawful conduct on January 6 by taking steps to sell his footage of the Capitol riot to media outlets.

In addition, the 3553(a) factors counsel against a sentence reduction for the further reason that the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers, causing serious bodily injury in many cases. Every rioter, whether or not they personally engaged in violence or personally threatened violence, contributed to this harm. *See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because Sandlin's presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions").

Finally, the government notes that the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who

have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

Thus, due to the unique nature of the January 6 riot, the harms caused by the January 6 riot, and the significant need to deter future mob violence, the government submits that even if the Court finds that § 4C1.1 applies, the Court should nevertheless deny a sentence reduction. Such treatment would recognize the unique nature of the criminal events of January 6, 2021, coupled with the overwhelming need to ensure future deterrence, despite a person's limited criminal history.[3]

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Hutton Marshall*
        JOSEPH HUTTON MARSHALL
        Assistant U.S. Attorney
        U.S. Attorney's Office for the
        District of Columbia
        DC Bar No. 1721890
        601 D Street N.W.
        Washington, D.C. 20579
        (202) 809-2166
        Joseph.hutton.marshall@usdoj.gov

---

[3] If the Court does decide in its discretion to grant the defendant's motion, the government requests that the Court delay release by 10 days in order to allow time for the Bureau of Prisons to process the release, as recommended by the Committee on Criminal Law of the Judicial Conference of the United States in its January 25, 2024 memorandum.