UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | No. 21-cr-88 (DLF) |
| RONALD SANDLIN, | |
| *Defendant*. | |

**ORDER**

Ronald Sandlin seeks a retroactive reduction in sentence under 18 U.S.C. § 3582(c)(2) and Amendment 821 to the U.S. Sentencing Guidelines. Sandlin pleaded guilty to felony obstruction, 18 U.S.C. § 1512(k), and assaulting a law enforcement officer, *id.* § 111(a)(1), (2), stemming from his conduct at the United States Capitol on January 6, 2021. Dkt. 84. The Court sentenced Sandlin to 63 months' imprisonment on each count to run concurrently. Dkt. 99. Before the Court is Sandlin's motion to reduce his sentence under U.S.S.G. § 4C1.1. Dkt. 133. For the reasons that follow, the Court will deny his motion.

In general, the Court cannot "modify a term of imprisonment once it has been imposed." 18 U.S.C. § 3582(c). But if "a defendant . . . has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the [U.S.] Sentencing Commission" under 28 U.S.C. § 994(o), the Court "may reduce" his sentence "if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." *Id.* § 3582(c)(2).

Policy Statement 1B1.10, an applicable policy statement issued by the Sentencing Commission, clarifies these instructions. *See Dillon v. United States*, 560 U.S. 817, 826 (2010). It says that a court must start by ascertaining whether the Commission has made a change to the

1

Sentencing Guidelines retroactive. U.S.S.G. § 1B1.10(a)(2)(A), (d) (policy statement). If so, the Court must "determine the amended guideline range that would have been applicable to the defendant if the [retroactive] amendment(s) had been in effect at the time the defendant was sentenced," leaving "all other guideline application decisions unaffected." *Id.* § 1B1.10(b)(1). Courts "generally 'may not reduce the defendant's term of imprisonment . . . to a term that is less than the minimum of the amended guideline range' produced by the substitution." *Dillon*, 560 U.S. at 826 (quoting U.S.S.G. § 1B1.10(b)(2)(A)).

In 2023, the Sentencing Commission amended the Sentencing Guidelines retroactively. *See* 88 Fed. Reg. 60534, 60535 (Sept. 1, 2023). The amendment, Amendment 821, reduces the guidelines range for certain offenders without a scorable criminal history by two points. U.S.S.G. § 4C1.1(a); 88 Fed. Reg. 28254, 28271 (May 3, 2023). But an offender is not eligible for a § 4C1.1 reduction if he used "violence or credible threats of violence in connection with [his] offense." U.S.S.G. § 4C1.1(a)(3). Further, the Court's authority to reduce a term of imprisonment under that provision is discretionary, and before any reduction it must consider the sentencing factors set forth in 18 U.S.C. § 3553(a). *See* 18 U.S.C. § 3582(c)(2); U.S.S.G. § 1B1.10 app. note 1(B)(i), (ii) (a district court must "consider the factors set forth in 18 U.S.C. § 3553(a) in determining . . . whether a reduction in the defendant's term of imprisonment is warranted").

## I.

Sandlin's motion fails because he engaged in violence and is therefore precluded from a reduction under § 4C1.1(a)(3). *See United States v. Bauer*, No. 21-cr-386 (TNM), Dkt. 195 at 4–5 (defining violence under § 4C1.1 as "use of physical force" typically "accompanied by fury, vehemence, or outrage" and "unlawfully exercised with the intent to harm;" or "the "exertion of any physical force so as to injure or abuse"). As Sandlin admitted in his statement of offense, he

traveled to Washington, D.C. with a car full of weapons including knives, bear spray, a handheld taser, gas masks, two magazines of ammunition, and a M&P pocket pistol. *See* Statement of Offense at 5, Dkt. 85. On the morning of January 6, Sandlin livestreamed video footage on social media calling for "fellow patriots" to "take the capitol," and he repeatedly asserted that "freedom is paid for with blood" and "there is going to be violence." *Id.* at 6. After attending the "Stop the Steal" rally, Sandlin traveled to the Capitol complex armed with a knife and wearing personal protective gear. *Id.* While making his way through the crowd, Sandlin yelled "we're not here to spectate anymore" and "if you're not breaching the building, move out of the way." *Id.* at 8. He arrived at the complex and climbed over exterior barricades around the perimeter. On his way up the stairs on the exterior of the Capitol building, Sandlin shouted threats at the U.S. Capitol Police officers attempting to secure the building, including "your life is not worth it today" and "you're going to die, get out of the way." *Id.*

Sandlin led the charge against Capitol Police at two separate choke points—the Rotunda doors and the Senate Galley—leading to the violent breach of both entrances by "dozens, if not hundreds, more rioters." Sentencing Tr. at 56, Dkt. 103. At the Rotunda, he joined the front flank of the mob pushing against the three Capitol Police officers guarding the door, one of whom had just been pepper sprayed by rioters. *Id.* at 44. During that altercation, Sandlin attempted to rip the helmet off the head of one of the officers—the Court found Sandlin was "intent on getting that officer's helmet off"—and told another "run for your life." *Id.* at 74. The mob eventually forced the doors open allowing rioters to enter the building, and Sandlin boasted "we breached the building, we were in the first wave." Statement of Offense at 7.

Sandlin then made his way to the hallway just outside the Senate Gallery, a balcony overlooking the Senate Chamber, alongside dozens of other rioters. *Id.* at 9. Three Capitol Police

officers were in the process of locking the doors to prevent a further breach. Sandlin initiated a shoving match to keep the Senate Gallery door open and made contact with the head of one of the officers. *Id.* The Court found that Sandlin was the rioter who "initiated the assault." Sentencing Tr. at 46. It further found that Sandlin "took more than one swing" and "used threatening language with those officers." *Id.* at 83–84.

In aggregate, Sandlin engaged in multiple violent acts and made credible threats of violence. His actions fall squarely within the conduct that other courts in this district have found to preclude a sentence reduction under § 4C1.1. *See Bauer*, No. 21-cr-386 (TNM), Dkt. 195 at 5; *United States v. Gundersen*, No. 21-cr-137 (RC), July 25, 2023 Sentencing Hearing, Dkt. 72 at 50 (defendant ineligible for § 4C1.1 reduction where he stipulated at bench trial that he "rushed Officer C.B. and forcefully slammed his heavy body into the officer's riot shield"); *United States v. Andrulonis*, No. 23-cr-085 (BAH), Dec. 15, 2023 Sentencing Hearing, Dkt. 33 at 12 (defendant ineligible for § 4C1.1 reduction where his mere presence as part of a mob posed credible threats of violence "both to the officers who were being overwhelmed and to people inside the building"). In light of the Court's determination that Sandlin "assault[ed] multiple police officers multiple times, with disastrous consequences," Sentencing Tr. at 56, the Court concludes that Sandlin's violent conduct precludes him from a sentence reduction under § 4C1.1.

## II.

Even assuming Sandlin did qualify for a reduction, the Court would decline to exercise its discretionary authority based on the same 18 U.S.C. 3553(a) factors it considered at sentencing. *See Dillon*, 560 U.S. at 827 (a district court's authority to reduce a term of imprisonment under 18 U.S.C. § 3582 is unambiguously discretionary). As the Court noted at sentencing, Sandlin's offense conduct was violent, aggravated, and "put multiple officers' lives at risk on January 6."

4

Sentencing Tr. at 90. It further found that Sandlin "has been exceedingly slow in taking responsibility for his actions and getting over the misguided view that he's a victim." *Id.* at 86. After reviewing analogous January 6 cases, and taking into account the need to avoid unwarranted sentencing disparities, the Court determined that a "significant sentence of imprisonment" was appropriate. *Id.* at 89. Nothing that Sandlin raises in his present motion changes the Court's conclusion.

    According, it is

    **ORDERED** that the defendant's Motion to Reduce Sentence, Dkt. 133, is **DENIED**.

    **SO ORDERED.**

November 6, 2024

DABNEY L. FRIEDRICH
United States District Judge